678 A.2d 634

STATE OF NEW JERSEY, PLAINTIFF–APPELLANT, v. CHARLES
E. GERNS, DEFENDANT–RESPONDENT.

Argued January 2, 1996—Decided July 9, 1996.

*James L. McConnell*, Assistant Prosecutor, argued the cause for appellant (*Nicholas L. Bissell, Jr.*, Somerset County Prosecutor, attorney).

*Susan C. Green*, Assistant Deputy Public Defender, argued the cause for respondent (*Susan L. Reisner*, Public Defender, attorney).

*Richard W. Berg*, Deputy Attorney General, argued the cause for amicus curiae, Attorney General of New Jersey (*Deborah T. Poritz*, Attorney General, attorney).

The opinion of the Court was delivered by

COLEMAN, J.

The primary issue in this appeal is whether a school-zone drug offender who signs a plea agreement that calls for "cooperation" in State drug investigations and prosecutions in exchange for a favorable recommendation at sentencing satisfies the plea agreement by good faith efforts that produce nothing of value to the State. We hold that under the Attorney General Guidelines promulgated pursuant to *State v. Vasquez*, 129 *N.J.* 189, 609 *A.*2d

29 (1992), a defendant's cooperation agreement can be satisfied only if his or her efforts are of substantial value to the State.

*I*

During an undercover narcotics investigation conducted by the Narcotics Strike Force of the Somerset County Prosecutor's Office, defendant, Charles Gerns, sold marijuana to an undercover detective. The sales occurred on September 12, 1993, when defendant sold one quarter of an ounce and on December 28, 1993, when he sold an additional one eighth of an ounce. Both sales occurred from his home which was located in a school zone. When defendant was arrested at his home on January 14, 1994, for those two sales, a consent search of his bedroom uncovered eight additional ounces of marijuana, $1660 in cash, and drug paraphernalia, such as plastic baggies and a scale.

Defendant was indicted on two counts of fourth-degree distribution of marijuana, contrary to *N.J.S.A.* 2C:35–5a(1) and *N.J.S.A.* 2C:35–5b(12); third-degree distribution of marijuana within 1,000 feet of school property, contrary to *N.J.S.A.* 2C:35–7; third-degree possession of marijuana with intent to distribute, contrary to *N.J.S.A.* 2C:35–5a(1) and *N.J.S.A.* 2C:35–5b(11); and third-degree possession of marijuana with intent to distribute within 1,000 feet of school property, contrary to *N.J.S.A.* 2C:35–7.

As part of a plea agreement, defendant executed a "Confidential Informer Contract of Cooperation" on June 27, 1994. That contract provided, among other things, that:

> The Somerset County Prosecutor's Office has agreed to evaluate the information supplied [by defendant]. Any recommendation will be based upon the nature and extent of the informer's cooperation as determined solely by the Somerset County Prosecutor.... The Somerset County Prosecutor's Office will be the sole determinator [sic] as to any violation(s)/interpretation of this contract.
>
> . . .
>
> I understand that I will be required to maintain close communications with the Somerset County Narcotic Task Force. Specifically, I must make contact, either in person or by telephone, with Officer Colucci or Officer Buckman at this department at least once every other day until I am informed by a law enforcement officer that such communication is no longer required.

On July 5, 1994, defendant pled guilty to the indictment. In exchange for the guilty pleas, the State promised to recommend a term of four years imprisonment with a three-year parole disqualifier. The State also agreed to make known to the sentencing judge the extent of any cooperative efforts made by defendant on behalf of the State. Defendant informed the court during the plea hearing that he understood the plea agreement and that he was satisfied with his attorney. It was the clear understanding of the State and defendant that his cooperation could result in an unspecified shorter sentence, both in the base sentence and the term of parole disqualification, on application of the prosecutor pursuant to *N.J.S.A.* 2C:35–12.

Approximately three days prior to the September 2, 1994, sentencing hearing, the prosecutor sent a letter to the sentencing court, without sending a copy to defendant's attorney, informing the court that defendant had not cooperated with the State "in any way, shape or form." At the court's direction, a copy of the letter was given to defense counsel in open court. Defense counsel rejected an offer by the court to permit counsel to consult with defendant before proceeding further and stated:

We're aware of the situation here, Judge. Just with regard to the letter here, I was present with Mr. Gerns when he spoke with the detective, provided various information. Unfortunately because of his arrest and his knowledge of the people that he knew that were involved in things that he was trying to assist them, he was unsuccessful in getting anyone to deal with him.

I don't think it was a purposeful failure to cooperate. I think he's just unable to cooperate because of circumstances. I don't think it should be considered negatively, or unfortunately, positively in regard to his sentencing.

Because the prosecutor concluded that defendant had not cooperated, the prosecutor withheld any recommendation that defendant's term of parole ineligibility be less than the three years specified in *N.J.S.A.* 2C:35–7. After merging all but two offenses, the court sentenced defendant to concurrent custodial terms of four years with a three-year period of parole ineligibility.

Defendant appealed, contending that the prosecutor did not follow the guidelines adopted by the Attorney General in response to *State v. Vasquez, supra,* 129 *N.J.* at 195–97, 609 *A.2d* 29, to

implement *N.J.S.A.* 2C:35–12. The Appellate Division in an unpublished opinion held that the prosecutor exercised his discretion in an arbitrary and capricious manner in not waiving the three-year term of parole ineligibility. The case was remanded for resentencing as if the prosecutor had waived the entire mandatory term. We granted the State's petition for certification. 142 *N.J.* 453, 663 A.2d 1360 (1995).

## II

Central to the disposition of this appeal are *N.J.S.A.* 2C:35–7 and –12 and guidelines promulgated to advise prosecutors in the exercise of their discretion in waiving parole disqualification in school-zone drug offenses.

The Comprehensive Drug Reform Act of 1986, *N.J.S.A.* 2C:35–1 to 36–9 (Drug Act), was promulgated as an integral part of the Legislature's effort to reevaluate the State's criminal laws in order to "ensure a uniform, consistent and predictable system for the sentencing of convicted offenders." *N.J.S.A.* 2C:35–1.1a. That goal was deemed to be "an essential prerequisite to any rational deterrent scheme designed ultimately to reduce the incidence of crime." *Ibid.* The Legislature also made clear its intention to afford "special protection to children from the perils of drug trafficking ... [by providing] especially stern punishment for those drug offenders who operate on or near schools and school buses...." *N.J.S.A.* 2C:35–1.1c; *State v. Vasquez, supra,* 129 *N.J.* at 197, 609 A.2d 29; *State v. Dillihay,* 127 *N.J.* 42, 53, 601 A.2d 1149 (1992). The Legislature's firm stance against drug trafficking in school zones is expressed in *N.J.S.A.* 2C:35–7 that provides:

> Any person who violates subsection a. of *N.J.S.A.* 2C:35–5 by distributing, dispensing or possessing with intent to distribute a controlled dangerous substance ... while on any school property ... or within 1,000 feet of such school property or a school bus, or while on any school bus, is guilty of a crime of the third degree and shall, except as provided in *N.J.S.A.* 2C:35–12, be sentenced by the court to a term of imprisonment. Where the violation involves less than one ounce of marijuana, the term of imprisonment shall include the imposition of a minimum term which shall be fixed at, or between, one-third and one-half of the sentence imposed, or one

year, whichever is greater, during which the defendant shall be ineligible for parole. *In all other cases, the term of imprisonment shall include the imposition of a minimum term which shall be fixed at, or between, one-third and one-half of the sentence imposed, or three years, whichever is greater, during which the defendant shall be ineligible for parole.*

[*N.J.S.A.* 2C:35–7 (emphasis added).]

The Legislature recognized, however, that drug distribution occurs through a complex chain of distributors and that it is necessary to encourage offenders to cooperate with law enforcement efforts to apprehend well-insulated drug traffickers. *State v. Bridges,* 131 *N.J.* 402, 408, 621 *A.*2d 1 (1993); *State v. Shaw,* 131 *N.J.* 1, 11, 618 *A.*2d 294 (1993); *State v. Vasquez, supra,* 129 *N.J.* at 204, 609 *A.*2d 29 (citing Cannel, *New Jersey Criminal Code Annotated,* 1987 Legislative Commentary on *N.J.S.A.* 2C:35–12 (1992)). The Legislature, therefore, contemporaneously enacted *N.J.S.A.* 2C:35–12 to permit the prosecutor to recommend relaxation of the mandatory term of parole ineligibility required by *N.J.S.A.* 2C:35–7 in cases in which a defendant has entered into an agreement with the State. The agreement may take the form of a negotiated plea agreement or a post-verdict agreement. *N.J.S.A.* 2C:35–12. Either way, the agreement may provide for a lesser base term or a lesser term of parole ineligibility, or both, as well as a specified fine or other disposition. *Ibid.* Consequently, section 12 transforms section 7's mandatory sentencing provision into "a hybrid, combining mandatory and discretionary features and delegating sentencing authority to both the courts and the prosecutors." *State v. Vasquez, supra,* 129 *N.J.* at 199, 609 *A.*2d 29.

Section 12 permits a waiver of the section 7 mandatory sentencing provision only at the option of the prosecutor. The statutory scheme manifested in sections 7 and 12 removes most of a sentencing court's discretionary power. *See N.J.S.A.* 2C:35–12; *State v. Bridges, supra,* 131 *N.J.* at 409, 621 *A.*2d 1; *State v. Vasquez, supra,* 129 *N.J.* at 204, 609 *A.*2d 29. Section 12 gives to prosecutors the power to mandate either directly or indirectly a minimum prison term in school zone cases. *Ibid.* Because of the enormous and uncontrolled power vested in prosecutors under

section 12, guidelines have been required to save section 12 from constitutional infirmity under the separation of powers doctrine. *State v. Vasquez, supra,* 129 *N.J.* at 195–97, 609 *A.*2d 29; *State v. Peters,* 129 *N.J.* 210, 218, 609 *A.*2d 40 (1992).

In addition to requiring guidelines to structure prosecutors' exercise of discretion under section 12, prosecutors must indicate on the record the reasons for their decisions whether to waive the parole disqualifier, thereby creating a basis for judicial review. *State v. Vasquez, supra,* 129 *N.J.* at 196, 609 *A.*2d 29; *State v. Peters, supra,* 129 *N.J.* at 218, 609 *A.*2d 40. The standard of judicial review of a prosecutor's decision requires a defendant to show by clear and convincing evidence that the prosecutor's decision was arbitrary or capricious to be entitled to relief. *State v. Vasquez, supra,* 129 *N.J.* at 196, 609 *A.*2d 29; *State v. Peters, supra,* 129 *N.J.* at 218, 609 *A.*2d 40.

In response to *Vasquez* and *Peters,* the Attorney General promulgated guidelines allowing for a reduction in the mandatory minimum term. Those guidelines contemplate that county prosecutors would establish and implement their own guidelines pursuant to the Attorney General's model. *See* Directive Implementing Guidelines Governing Plea–Bargaining and Discretionary Decisions in Drug Prosecutions Involving Mandatory Terms from Robert J. Del Tufo, Attorney General, to the Director, Division of Criminal Justice and all County Prosecutors (Sept. 15, 1992) (*Attorney General Guidelines* ). The Attorney General Guidelines were found to satisfy constitutional standards. *State v. Jimenez,* 266 *N.J.Super.* 560, 569–70, 630 *A.*2d 348 (App.Div.1993). Counties that have not adopted their own guidelines, however, are required to follow the Attorney General Guidelines in order to avoid an unconstitutional disposition under section 7. Somerset, Bergen, Ocean and Sussex Counties have not adopted their own guidelines.

## III

The State contends that under the Attorney General Guidelines the presumptive term is three years for a third-degree school zone

case. Defendant argues that the presumptive term must be determined by the guidelines adopted in the respective counties from which downward or upward departures will be permitted only for specified reasons. He asserts that individual counties can, in their guidelines, select a presumptive term anywhere between the 364 days mentioned in section II.3 of the Attorney General Guidelines and the three years specified in *N.J.S.A.* 2C:35–7.

As noted earlier, this case is controlled by the Attorney General Guidelines because Somerset County has not adopted separate guidelines. Section II.1 of the Guidelines, entitled "The Presumptive Sentence," provides:

> The decision whether to enter into a plea agreement or post-trial agreement in prosecutions pursuant to [the Drug Act] involving a mandatory term shall reflect the legislative policies enunciated in *N.J.S.A.* 2C:35–1.1 and the legislative determination that the appropriate sentence in the normal case is, for those offenses so designated in the statute, the specified mandatory term of imprisonment and minimum term of parole ineligibility.
>
> [*Attorney General Guidelines, supra,* § II.1]

The Attorney General Guidelines' approach to the waiver decision depends on whether the agreement is a standardized plea agreement or a nonstandardized agreement. Standardized plea agreements are those that do not require cooperation of the defendant as a precondition for a favorable sentence recommendation. They are based on consideration of "available prosecutorial and judicial resources and the need to ensure a speedy trial by the practical means of encouraging guilty defendants to plead guilty in return for a recommendation of a lesser sentence." *Attorney General Guidelines, supra,* § II.4. The standardized plea agreement also furthers the Drug Act's goal of rehabilitation through early disposition. *State v. Shaw, supra,* 131 *N.J.* at 13, 618 *A.*2d 294.

Generally, section II.3 of the Guidelines requires a mandatory minimum sentence for any plea agreement or post-verdict agreement when the Drug Act requires a mandatory minimum sentence for a school-zone offense. There are exceptions to this general

rule depending on whether a standardized plea agreement is involved. If a standardized plea agreement involves less than one ounce of marijuana, a prosecutor may waive the mandatory term altogether. Also, if a standardized plea agreement involves a third-degree school-zone offense, the prosecutor may agree to a split sentence pursuant to *N.J.S.A.* 2C:44–1c, but a minimum of 364 days must be served in a county jail as a condition of probation. *Ibid.*

The second type of a negotiated agreement is the nonstandardized one that involves either a plea agreement or a post-verdict agreement. Both require a defendant to provide cooperation with the State in exchange for a favorable sentence recommendation. Those agreements require the approval of the Director of the Division of Criminal Justice, the county prosecutor, or a designated supervising attorney. If a cooperation agreement is necessary to ensure cooperation by a defendant and if that defendant provides cooperation of substantial value to the State, a prosecutor's waiver decision may include a "dismissal of the charge or the imposition of a county jail term as a condition of a probationary sentence or a noncustodial disposition." *Id.* at § II.3. Thus the Guidelines recognize the importance of a defendant's cooperation with the State which was clearly expressed by the Legislature when it made cooperation a mitigating factor for sentencing purposes. *N.J.S.A.* 2C:44–1b(12).

The problem in the present case is not what presumptive term is established under the Attorney General Guidelines. Rather, the questions are whether defendant satisfied his cooperation agreement under those Guidelines and what sentence was contemplated if he fulfilled the cooperation requirement. Inasmuch as defendant pled guilty to third and fourth-degree school-zone offenses and agreed to provide cooperation with the State, the prosecutor had the discretion to waive all of the mandatory sentence.

## IV

The State argues that it did not violate the plea agreement in declining to waive any of the mandatory period of parole ineligibil-

ity. It is the State's position that the plea agreement "merely set the ceiling for the maximum prison sentence defendant could receive, which was four years," and "called for the imposition of a three-year period of parole ineligibility, as required under *N.J.S.A.* 2C:35–7."

In addition, the State agreed to inform the sentencing court of any information regarding defendant's cooperation with the prosecutor's office. According to the State, "[t]his is exactly what [it] did." By the State's estimation, the defendant failed to cooperate with the State "in any way, shape or form." The State further claims that this failure to cooperate was "admitted to by the defendant" and defense counsel. Under those facts, the State asserts there was no reason for it to waive the mandatory minimum period of parole ineligibility pursuant to *N.J.S.A.* 2C:35–12.

The State argues further that the Appellate Division, on the basis of a "barren and sterile record," should not be able to second-guess its decision with respect to what constitutes "cooperation" for waiver-discretion purposes. The State contends that the prosecutor "is in the best position to determine the capacity of a defendant to offer meaningful cooperation and the degree of his cooperation." The State defines "cooperation" as assistance given by the defendant that results in the production of valuable information for the State. The information and assistance provided by Gerns, the State maintains, did not constitute "cooperation" because it "was clearly of no value to the State."

Defendant argues that his good faith efforts satisfied his obligation to cooperate with the Prosecutor's Office. He asserts that the State's decision to inform the sentencing court that he failed to cooperate with law enforcement contradicted his expectations at the time the plea agreement was executed. Defendant asserts that the plea agreement did not explain what constitutes "cooperation," nor did it specify what sentencing recommendation the prosecution would make if he succeeded in cooperating. The State responds that any "good faith" efforts by defendant to cooperate were of no consequence to the State and that rewarding

defendant for worthless cooperation would contradict the Legislature's objective in enacting *N.J.S.A.* 2C:35–12.

-A-

■ The Attorney General Guidelines provide for accommodations in sentencing recommendations for those defendants willing to aid in the identification and apprehension of drug traffickers. *Attorney General Guidelines, supra,* § II.9. The Guidelines were amended in 1993 pursuant to the mandate of *State v. Shaw, supra,* 131 *N.J.* at 18–19, 618 *A.*2d 294, to guide prosecutorial waiver decisions that depend on a defendant's timely appearance for sentencing. The Guidelines as amended also detail how cooperation agreements are to be evaluated:

> Accommodations in sentencing recommendations may be made for those defendants who are willing to aid in the identification, investigation, apprehension and prosecution of collaborators, co-conspirators, suppliers and superiors in a drug trafficking scheme, or other persons involved in any form of criminal activity, or leading to the seizure or forfeiture of property used in furtherance of or derived from criminal activity, or to provide intelligence information concerning the nature, methods or activities of the drug distribution network. . . .
>
> . . . The cooperation agreement should include the requirements that the person fully cooperates in disclosing all criminal activities known to the person, turning over or assisting in obtaining any records which corroborate criminal activities, and giving complete and honest testimony at any and all proceedings concerning such activities where the person's testimony is needed, including before any grand juries and at any resulting trial(s). The prosecuting attorney's recommendation should be dependent upon the value to the prosecution of the person's cooperation. . . .
>
> [*Revisions to "Guidelines Governing Plea–Bargaining and Discretionary Decisions in Drug Prosecutions Involving Mandatory Terms"* from Robert J. Del Tufo, Attorney General, to Director, Division of Criminal Justice and all County Prosecutors § 9.a. (Apr. 6, 1993) (*Guideline Revisions*).]

The Guideline Revisions also address partial performance of the cooperation agreement:

> In the event that the defendant violates the terms of a conditional plea agreement, the prosecutor shall determine whether the violation constitutes a material breach of the agreement in the context of all the circumstances, including the extent of any partial performance by the defendant, *either in testifying in other cases, providing information useful to the prosecutor,* or participating in rehabilitative activities pursuant to the agreement. In the event of a material breach, the prosecutor may retract the waiver offer.
>
> [*Guideline Revisions, supra,* § 9.c. (emphasis added).]

Thus, under the clear language of the Guideline Revisions, the prosecutor's recommendation with respect to section 7 parole ineligibility is to be based on the value of defendant's cooperation as determined by the prosecutor. Although the Guideline Revisions recognize that partial performance may sometimes satisfy a defendant's obligation to cooperate under a plea agreement, they do not state or imply that worthless efforts are to be rewarded. To the contrary, they provide that even partial performance must provide some tangible benefit to the prosecutor.

Furthermore, the requirement in the Guideline Revisions that cooperation be of substantial benefit to the State is consistent with the Drug Act's overall objective. The Legislature emphasized its intention to provide for stern punishment of school-zone offenders by imposing mandatory periods of parole ineligibility for those offenses. *N.J.S.A.* 2C:35-7. In providing for prosecutorial waiver of mandatory terms, the Legislature recognized the need for flexibility in sentencing in order to secure cooperation leading to better overall law enforcement:

> It is essential in drug cases that prosecutors be able to secure the cooperation (in the form of confidential information and testimony) of certain lower and middle level offenders to be able to identify, apprehend, prosecute and convict the more culpable, higher echelon members in a given drug distribution network.

> [Cannel, *New Jersey Criminal Code Annotated,* 1987 Legislative Commentary on *N.J.S.A.* 2C:35-12 (1995).]

In addition, the substantial value standard we adopt accords with the approach established in the federal system. The United States Sentencing Guidelines provide that a sentencing court may depart downward from the presumptive punishment range upon motion by the government stating that the defendant has provided "substantial assistance" to the prosecution. *U.S.S.G.* § 5K1.1. Federal courts have held that an agreement to provide a sentencing recommendation vests the prosecutor with sole power to determine whether the cooperation provided by the defendant constitutes substantial assistance. *United States v. Jones,* 58 *F.*3d 688, 691 (D.C.Cir.), *cert. denied,* — *U.S.* —, 116 *S.Ct.* 430, 133

*L.Ed.*2d 346 (1995); *United States v. Fairchild,* 940 *F.*2d 261, 266 (7th Cir.1991). That discretion is maintained even where the defendant makes good faith efforts to cooperate or provides as much assistance as is possible under the circumstances. *See United States v. Jones, supra,* 58 *F.*3d at 691 (noting that even if defendant had volunteered all the information he or she had or all that had been asked of him or her, prosecutor could still choose to decline recommending departure); *United States v. Fairchild, supra,* 940 *F.*2d at 266 ("Nothing a defendant does, up to and including a 'good faith' effort to assist the government, guarantees him [or her] a substantial assistance departure.").

We acknowledge that defendant in the present case waived his right to a hearing to determine whether he satisfied the terms of the cooperation agreement. Sentencing courts, however, should not automatically impose the statutorily-mandated sentence when the prosecutor informs the court that a defendant has not cooperated. Even when a hearing is not requested, defense counsel should be provided prior to sentencing with a copy of the prosecutor's waiver recommendation letter addressed to the court. Also, as part of a defendant's right of allocution, he or she should be permitted to offer an explanation for non-cooperation or the extent of cooperation. That right was afforded the defendant in this case.

Notwithstanding the fact that the Attorney General Guidelines and the Guideline Revisions vest the prosecutor with the authority to decide whether a defendant has provided cooperation that has substantial value to the State, a prosecutor may not be arbitrary or capricious in that determination. Thus, if requested, a defendant is entitled to a hearing to examine whether the prosecutor's determination that defendant did not cooperate, or that the cooperation was not of substantial value to the State. Affording such a hearing is consistent with the Drug Act and the Attorney General Guidelines. Although the hearing must be "deliberate, not perfunctory," ordinarily the prosecutor's decision will be dispositive. *State v. Shaw, supra,* 131 *N.J.* at 17, 618 *A.*2d 294. To base a

reduction in sentence on a defendant's efforts in the absence of valuable cooperation fails to achieve any legislative purpose. To hold otherwise would defeat the Drug Act's overall intention to provide strict punishment for drug-related offenses.

We hold that it is neither arbitrary nor capricious for a prosecutor to base his or her decision to recommend a waiver of the mandatory sentence required by section 7 on the value of the cooperation received from a defendant. The Appellate Division erred in concluding that good faith efforts alone could satisfy defendant's cooperation agreement.

-B-

We agree with defendant, however, that the plea agreement should have defined "cooperation." The plea agreement form and the plea transcript disclose that defendant was informed that the sentence recommended by the prosecutor was "4 years, 3 years without parole. However prosecutor will make known to sentencing judge defendant's cooperation regarding the sentence recommendation." Although defendant executed a "Confidential Informer Contract of Cooperation," the term "cooperation" is not defined in that document or anywhere else in the record. The Attorney General Guidelines, *supra*, § II.9, and the Guideline Revisions, *supra*, § 9a., define "cooperation," but the record does not reflect that defendant was made aware of that definition.

Guilty pleas must be made knowingly, intelligently and voluntarily. *R.* 3:9–2; *State v. Warren*, 115 *N.J.* 433, 442, 558 *A.*2d 1312 (1989); *State v. Taylor*, 80 *N.J.* 353, 362, 403 *A.*2d 889 (1979). That includes an understanding of the penal consequence of the guilty plea. *R.* 3:9–2; *State v. Warren, supra*, 115 *N.J.* at 442, 558 *A.*2d 1312; *State v. Taylor, supra*, 80 *N.J.* at 362, 403 *A.*2d 889. When a plea agreement is susceptible to a reasonable misunderstanding with respect to the meaning of a material term of the agreement, the appropriate remedy is to extend to defendant one of several options. *State v. Howard*, 110 *N.J.* 113, 124–26, 539 *A.*2d 1203 (1988); *State v. Kovack*, 91 *N.J.* 476, 484–85, 453 *A.*2d

521 (1982). Based on the sparse record before us, we afford defendant the option on remand to (1) withdraw his guilty pleas; (2) move for a hearing on whether his "cooperation" was of substantial benefit to the State; or (3) renegotiate the plea agreement. *See State v. Kovack, supra,* 91 *N.J.* at 485, 453 *A.*2d 521. If defendant elects to have a hearing on whether he satisfied the cooperation agreement, the prosecutor at the conclusion of the hearing must state the reasons for his or her waiver decision.

We agree with defendant that the plea agreement should have indicated more precisely the sentence the prosecutor would recommend to the court if defendant's cooperation was determined by the prosecutor or the prosecutor's designee to be of substantial value to the State. When a defendant is offered leniency based on cooperation provided to law enforcement prior to execution of the plea agreement, the prosecutor can and must state precisely the sentence recommendation. The problem arises in cases in which the plea agreement contemplates a waiver decision at the time of sentencing based on the extent and quality of a defendant's cooperation between the date of the plea agreement and a few days prior to the sentencing hearing. The present case falls into the latter category in that the agreement capped the base term at the presumptive sentence for a third-degree offense. It listed the mandatory three years of parole ineligibility, but the parole ineligibility could be modified based on defendant's cooperation. Under the agreement even if defendant provided valuable information to the State, the prosecutor could have chosen to waive only a few months of the minimum term without violating the State's part of the agreement.

We recognize the need, on the one hand, for the prosecutor to have some flexibility in sentencing recommendations based on the substantiality and quality of defendant's cooperation, and on the other hand, the defendant's need to know at the time of his or her plea the outer limits of the prosecutor's conditional waiver decision. In an effort to balance those competing interests, we direct that the plea agreement must contain a range on the prosecutor's

conditional recommendation. The actual recommendation at sentencing may not require a defendant to serve a longer minimum term than that specified in the plea or post-verdict agreement. Alternatively, the plea or post-verdict agreement may specify the precise sentence if defendant provides cooperation to the satisfaction of the prosecutor or the prosecutor's designee.

V

Defendant argues further that under the current sentencing scheme there has occurred wide sentencing disparity that would serve to invalidate the sentence imposed by the trial court as being discriminatory and arbitrary or capricious. This is the first case in which the Court has been confronted with the potential for sentencing disparities under the Attorney General Guidelines. We fully appreciate that allowing counties to adopt their own guidelines, in addition to the significant prosecutorial discretion within the county system, may lead to disparity rather than uniformity in sentencing. *State v. Press,* 278 *N.J.Super.* 589, 603–04, 651 *A.*2d 1068 (App.Div.) (Stern, J.A.D., dissenting), *certif. denied,* 140 *N.J.* 328, 329, 658 *A.*2d 727, 729 *and appeal dismissed,* 144 *N.J.* 373, 676 *A.*2d 1089 (1996). On this appeal, the arguments and the statistical data proffered in support of the claim of sentencing disparity are impressive. We do not, however, recognize sentencing disparity as an issue that should or can be directly confronted by the Court in this case. Nevertheless, the indications of grave sentencing disparities are sufficient to engender a concern over the potential for sentencing disparity. That concern must be addressed in light of the Code's overriding commitment to assuring uniformity in criminal sentencing: "The paramount goal of sentencing reform was greater uniformity." *State v. Roth,* 95 *N.J.* 334, 369, 471 *A.*2d 370 (1984).

The full nature, scope and significance of sentencing disparity are unclear on the record in this case. Whether the potential for disparity would offend either the Constitution or the principles of uniformity of the Code cannot be determined. Because the Court

reverses and remands on a separate issue and different grounds, we need not determine those questions at this juncture. The issue of sentence disparity is most appropriately addressed on a comprehensive basis rather than considered and resolved in the narrow context and under the procedural constraints of an adversarial proceeding. Accordingly, we request the Attorney General to undertake a review of the state-wide sentencing practices and experience under the Attorney General Guidelines and to furnish the Court with the results of that review as well as any forthcoming recommendations. The County Prosecutors and the Public Defender are also requested to participate in this effort.

Although the Court acknowledges that the sentence imposed by the trial court does not violate the Attorney General Guidelines, ante at 230, 678 A.2d 641, that sentence may be significantly more severe than the standardized plea offer that would have been available to defendant had he committed the same offense in other counties. We anticipate that the matter of defendant's sentence will again become the subject of plea negotiations and resentencing. We urge the prosecutor and the trial court in the exercise of their respective discretion to be especially mindful of the problem that is posed by the potential of disparity in considering an acceptable plea agreement and sentence.

We reverse the judgment of the Appellate Division and remand to the Law Division for further proceedings in accordance with this decision. Unless defendant seeks relief in the Law Division within forty-five days from this decision, the sentence of four years with three years of parole ineligibility previously imposed by the Law Division will be reinstated.

*For affirmance*—Justices HANDLER, POLLOCK, O'HERN, GARIBALDI, STEIN and COLEMAN—6.

*Opposed*—None.