**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0175-19

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

E.S.,

     Defendant-Appellant.

_____

Submitted February 3, 2021 – Decided February 25, 2021

Before Judges Sumners, Geiger and Mitterhoff.

On appeal from the Superior Court of New Jersey, Law Division, Ocean County, Indictment No. 17-02-0032.

Peter R. Willis, attorney for appellant.

Gurbir S. Grewal, Attorney General, attorney for respondent (Sarah C. Hunt, Deputy Attorney General, of counsel and on the brief).

PER CURIAM

Defendant E.S.[1] appeals from an August 9, 2019 order denying his motion for a reduction of sentence following his cooperation with law enforcement pursuant to a cooperation agreement and the sentence imposed by an August 19, 2019 judgment of conviction. We find no merit in his arguments and affirm.

We derive the following facts from the record. In February 2017, a State grand jury returned a four-count indictment against defendant. On September 11, 2017, defendant pled guilty to first-degree distribution of CDS, N.J.S.A. 2C:35-5(a)(1), (b)(1), (c), and N.J.S.A. 2C:2-6. Under the terms of the Brimage[2] plea agreement, the State agreed to recommend a ten-year prison term with a forty-month period of parole ineligibility and to dismiss the other three counts. During the plea hearing, defendant acknowledged that between November 3, 2014, and May 15, 2015, he knowingly and purposely distributed over five ounces of cocaine. The court accepted defendant's plea.

On October 18, 2018, defendant entered into a cooperation agreement with the Division of Criminal Justice (the Cooperation Agreement). It set forth the

---

[1] We refer to defendant by initials to maintain the confidentiality of records that were sealed under Rule 1:38-11. See R. 1:38-3(f)(4).

[2] State v. Brimage, 153 N.J. 1 (1998).

A-0175-19

terms and conditions of defendant's anticipated cooperation against an individual we will refer to as Person 1.[3]

On April 1, 2019, the court conducted an in-camera Gerns[4] hearing at defendant's request. New Jersey State Police (NJSP) Detective Sergeant John Cipot, NJSP Detective Andrew Oliveira, and defendant testified at the hearing. The following facts were adduced.

Beginning in November 2014, Cipot supervised an investigation into cocaine distribution in Ocean, Monmouth, and Middlesex Counties. The investigation resulted in the arrest of approximately thirty offenders, including defendant, the seizure of five kilograms of cocaine, and the confiscation of $125,000 in cash. Defendant was charged with selling upwards of thirty ounces of cocaine.

Before he signed the Cooperation Agreement, defendant alleged Person 2 had been involved in a fight with a cooperating witness at a bar. As a result, Person 2 was charged with obstruction of justice and interfering with a witness.

---

[3] In order to maintain the confidentiality of records that were sealed under Rule 1:38-11, we refer to the target of the Cooperation Agreement as Person 1 and the other five people that defendant identified as Persons 2 through 6. See R. 1:38-3(f)(4),

[4] State v. Gerns, 145 N.J. 216 (1996).

However, the charges were later dismissed because the information defendant provided was false.

On January 11, 2018, the State sent defendant a letter formalizing the Division of Criminal Justice's understanding concerning defendant's anticipated proffer of information to NJSP representatives six days later. The letter explained that the purpose of the proffer would be to enable the State to evaluate defendant's information about criminal activity prior to making any determination to recommend a reduction of the previously agreed upon recommended sentence. If defendant provided "fruitful" information, "a separate cooperation agreement [would] be signed detailing the parameters of any reduction in the State's sentencing recommendation."

Defendant read the letter and discussed it with his attorney. He acknowledged that he voluntarily agreed "to provide information by way of a proffer . . . without any [additional] promises or representations other than those set forth [in the letter]." Defendant and his attorney signed the letter on January 17, 2018.

Cipot and two deputy attorney generals met with defendant and his attorney for the proffer. Defendant identified Person 3 as a cocaine dealer whom defendant dealt with in the past and believed he could make purchases from

4

again. Based on that information, the NJSP checked to determine whether other agencies were investigating Person 3 and learned that the Monmouth County Prosecutor's Office (MCPO) was already investigating him. The NJSP asked the MCPO to join their investigation as a cooperating agency but the MCPO declined because an MCPO undercover officer had already made ten CDS purchases from Person 3. According to Cipot, "[n]othing that [the NJSP] provided was anything that was new to [the MCPO] or could further their investigation." As a result, the NJSP was unable to proceed with an investigation of Person 3. Eventually, the MCPO arrested Person 3. Oliveira testified that his arrest would have occurred even without the information defendant provided.

Defendant contended that he could have bought ounces of cocaine from Person 3 while the MCPO's undercover had only purchased grams. Because that never occurred, defendant's assistance concerning Person 3 was limited to debriefing the MCPO. Defendant acknowledged that no cooperation agreement existed regarding Person 3 and that he was unaware if the information he provided led to an arrest or otherwise furthered MPCO's investigation.

In March 2018, defendant identified Persons 5 and 6, who were involved in small scale distribution of prescription drugs. Since the NJSP had no interest

5

in pursuing the distribution of small amounts of prescription drugs, nothing came of the information provided by defendant. Defendant acknowledged no cooperation agreement existed governing this information.

In September 2018, defendant identified Person 1 as a potential target. Defendant informed investigators that Person 1 sold cocaine and that he would eventually be able to purchase an ounce from Person 1.

On October 18, 2018, defendant and the Division of Criminal Justice executed the Cooperation Agreement, which contained "the terms and conditions of defendant's anticipated cooperation" against Person 1. The Cooperation Agreement provided, in pertinent part:

> If the defendant's cooperation results in the prosecution of an individual identified as [Person 1] for First[-]Degree Distribution of Controlled Dangerous Substances (or Possession With Intent to Distribute Controlled Dangerous Substances), in violation of N.J.S.A. 2C:35-5, his recommended term of parole ineligibility will be reduced by 12 months. If the defendant's cooperation results in the prosecution of [Person 1] for Second-Degree Distribution of Controlled Dangerous Substances (or Possession With Intent to Distribute Controlled Dangerous Substances), in violation of N.J.S.A. 2C:35-5, his recommended term of parole ineligibility will be reduced by six months.

No other target was the subject of the Cooperation Agreement. Paragraph 4(B)(i) of the Cooperation Agreement stated that "[i]f notwithstanding his best

efforts, defendant's cooperation [was] not productive and of substantial value to the State, his recommended sentence [would] not be reduced." The Cooperation Agreement expressly stated that renegotiation for further cooperation was possible but "[a]ny modification made to th[e] Agreement for additional cooperation [was] not binding unless reduced to writing and signed by all parties." It further provided that "[i]f after fulfilling the requirements [set forth in the Agreement] defendant's cooperation result[ed] in additional Indictments charging another person or persons in a separate criminal scheme, the parties [could], at the State's sole discretion, amend this agreement to include consideration for that additional cooperation." The Cooperation Agreement also included an integration clause, which read, "[n]o promises, agreements, or conditions have been entered into other than those set forth in this Agreement, and none will be entered into unless memorialized in writing and signed by both parties."

Thereafter, the NJSP began investigating Person 1 by surveilling and planning a controlled purchase of cocaine. Defendant successfully purchased an eighth of an ounce of cocaine from Person 1 in South Amboy. Immediately after the controlled purchase, defendant met with Cipot on the outskirts of South Amboy. While Cipot and defendant sat in an undercover vehicle, Cipot

observed Person 1 drive by them. Cipot suggested that defendant reach out to Person 1 to dispel any suspicion by mentioning that defendant noticed him in the area and that defendant was simply meeting with someone to sell the cocaine he had just purchased.

After defendant briefly spoke to Person 1, contact between defendant and Person 1 ceased and further attempts to set up controlled purchases with him were unsuccessful. As a result, the NJSP was unable to further its investigation of Person 1.

Before defendant was sentenced, he also provided background information about Person 4. Cipot had been assisting British authorities with its investigation of Person 4, who was wanted in the United Kingdom for a 2001 homicide and had been arrested in New Jersey during the investigation of defendant's narcotics case. By the time defendant became involved, British authorities had already drafted an arrest warrant for the murder and were "just looking for background information on [Person 4] while he was in the United States because they didn't have any information." During a meeting with British authorities, defendant made no mention of Person 4's involvement in a homicide.

Around January 2019, defendant informed Oliveira that he "remembered possibly that [Person 4] told him one night that he had killed somebody in the

U.K." This information was later shared with British authorities, but it bore no fruit. Cipot did not consider the information credible because defendant failed to mention it during the hours-long meeting with British authorities; instead, defendant decided to share the information shortly before his sentencing date. Defendant acknowledged no cooperation agreement existed concerning Person 4 and that none of the information he provided led to any additional arrests. Also, British law enforcement never informed defendant that his testimony was necessary related to the homicide and he never testified against Person 4.

Shortly before sentencing, defendant also identified an additional potential target who sold drugs and owed defendant money. The NJSP declined to act on the information because "[i]t was a low-level cocaine investigation" and it was at least the third time defendant came forward with information about possible targets right before sentencing.

Finally, defendant and Oliveira spoke briefly about drug prices and trends around the area but nothing that assisted law enforcement with any investigation. The two ceased communication at that point. Defendant did not identify any other targets.

On August 2, 2019, the court issued an order and accompanying written decision denying defendant's motion for a downward departure from

9

recommended sentence under the plea agreement of ten-year term with a forty-month period of parole ineligibility pursuant to the Brimage plea agreement.

First, the court considered that defendant purchased only one-eighth of an ounce of cocaine from Person 1. Shortly after the transaction took place, Person 1 observed defendant in another vehicle and stopped speaking to him.

The court considered defendant's information concerning Person 2 but noted it occurred before the Cooperation Agreement was entered into. The information defendant provided involved charges of obstruction of justice and interfering with a witness. Those charges were dismissed when Person 2 pled guilty to first-degree distribution of CDS.

The court next considered defendant's information concerning Person 3. Although defendant believed he could buy substantial quantities of cocaine from Person 3, that never occurred because the MCPO was already investigating Person 3. Even though Olivieri testified that defendant's information was useful and helpful, he also explained that Person 3 would have been arrested without the information provided by defendant.

The court also considered defendant's information concerning Person 4. Although defendant provided "significant information," he "never entered into a cooperation agreement or testified in respect to Person 4."

Finally, the court considered defendant's identification of Persons 5 and 6 to the NJSP. "[B]ecause of the low level [of] drugs involved there was no cooperation agreement" as to Persons 5 and 6 and they "were not pursued by the State."

The court explained that "the cooperation of the defendant must be of substantial value to the State to satisfy the agreement. As such, a defendant's good faith efforts are not enough to satisfy the agreement in producing information of a 'substantial value' to the State." (citations omitted).

The court found that the Cooperation Agreement "was specific," contained "sufficient detail," set forth "the reasonable expectations and obligation of both the defendant and the State," and stated that "[t]he State had the primary authority to determine what was productive and a substantial value to the State." Any cooperation beyond the terms of the agreement required "a separate written agreement."

The court also found that the Cooperation Agreement was focused and limited in scope, involving Person 1 and no others. It found that defendant's cooperation did not result in the prosecution of Person 1 for either first- or second-degree distribution or possession with intent to distribute CDS.

A-0175-19

The court "recognize[d] the good faith efforts made by the defendant" by providing information on five other individuals. Notwithstanding those efforts, the court found he did not "satisfy the agreement in producing information of a 'substantial value' to the State." The court further found that "defendant has not shown by clear and convincing evidence that the State's sentence recommendation was arbitrary and capricious." Finally, upon reviewing the aggravating and mitigating factors, the court found "no reasons to justify" downgrading count two to a second-degree offense.

On the same day, the court sentenced defendant in accordance with the plea agreement to a term of ten years, subject to a forty-month parole ineligibility period. (Da14-16). The court found aggravating factors three (risk that defendant will commit another offense), five (substantial likelihood that defendant is involved in organized criminal activity), and nine (need to deter defendant and others from violating the law). See N.J.S.A. 2C:44-1(a)(3), (5), and (9). The court gave "light weight to aggravating factor [three], moderate weight to aggravating factor [five,] and heavy weight to aggravating factor [nine]."

The court found mitigating factors seven ("no history of prior delinquency or criminal activity"), eight ("defendant's conduct was the result of

A-0175-19

circumstances unlikely to recur"), nine (defendant's "character and attitude . . . indicate that he is unlikely to commit another offense"), eleven (imprisonment "would result in excessive hardship to [defendant] or his dependents"), and twelve (defendant's willingness to cooperate with law enforcement). See N.J.S.A. 2C:44-1(b)(7), (8), (9), (11), and (12). The court gave "clear weight" to mitigating factor twelve, finding that although defendant's cooperation did not rise to the level of "substantial value," he made "good faith efforts . . . on numerous attempts even putting himself in jeopardy." The court determined that the aggravating and mitigating factors were in equipoise and imposed the recommended sentence, noting it "could not go lower." This appeal followed.

Defendant raises the following points for our consideration:

> POINT I
>
> THE STATE'S ARBITRARY AND CAPRICIOUS POSITION CONTINUES TO DEFY THE COURT'S RULING IN STATE V. GERNS AS WELL AS THE ATTORNEY GENERAL'S BRIMAGE GUIDELINES AND ITS BAD FAITH MISCHARACTERIZATION OF [DEFENDANT'S] COOPERATION AND EXCLUSIVE RELIANCE ON AN UNCONSCIONABLE, UNREASONABLE COOPERATION AGREEMENT GOES AGAINST THE INTERESTS OF JUSTICE AND WARRANTED A REDUCTION AT SENTENCING.

A. The State is Mischaracterizing and Downplaying the Value of [Defendant's] Cooperation, Ignoring Key Aspects of the Same.

1. Cooperation Assistance Provided Against [Person 4].

B. [Defendant] Provided Assistance with Respect to a Myriad of Additional Investigations that When Viewed Collectively and Individually Clearly Offered Substantial Value to the State Deserving a Downward Departure.

2. Cooperation Assistance Provided Against [Person 2].

3. Cooperation Assistance Provided Against [Person 3].

4. Cooperation Assistance Provided Against [Person 1].

C. Examining [Defendant's] Cooperation Through the Required "Broad Spectrum of Conduct" Reveals He Not Only Provided Substantial Cooperation in Accordance with Section 13 of the Brimage Guidelines, But His Cooperation Agreement is Inherently Flawed and Goes Against the Attorney General's Own Policy Guidelines Regarding the Same.

D. The State's Review of [Defendant's] Cooperation Wavered Inconsistently Between the Two (2) Deputy Attorney Generals Handling the Case.

POINT II

THE TRIAL COURT'S GERNS DECISION AND CORRESPONDING RULING NOT TO GRANT A DOWNWARD DEPARTURE AT SENTENCING WERE CLEARLY MISTAKEN AND CAUSED AN UNJUST RESULT FOR [DEFENDANT]

14

WARRANTING APPELLATE REVERSAL OR
REMAND PURSUANT TO R. 2:10-2 AND R. 2:10-3.

We are unpersuaded by these arguments.

"The Comprehensive Drug Reform Act of 1987 (CDRA) imposes mandatory sentences and periods of parole ineligibility for certain offenses, N.J.S.A. 2C:43-6(f); it also provides an exception to the imposition of such sentences in the context of a negotiated plea agreement, N.J.S.A. 2C:35-12." State v. Courtney, 243 N.J. 77, 80 (2020). Significantly, N.J.S.A. 2C:35-12 "requires the sentencing court to enforce all agreements reached by the prosecutor and a defendant under that section and prohibits the court from imposing a lesser term of imprisonment than that specified in the agreement." Ibid. (quoting Brimage, 153 N.J. at 9).

The Supreme Court has interpreted N.J.S.A. 2C:35-12 to require judicial oversight "to protect against arbitrary and capricious prosecutorial decisions." State v. Vasquez, 129 N.J. 189, 196 (1992) (citation omitted). In 2004, revised guidelines were promulgated to ensure statewide uniformity in the exercise of prosecutorial discretion when negotiating plea agreements under N.J.S.A. 2C:35-12. Revised Attorney General Guidelines for Negotiating Cases Under N.J.S.A. 2C:35-12 (July 15, 2004) (Brimage Guidelines). "[A]ll plea agreements that are offered in exchange for a defendant's promise to provide future or ongoing cooperation must set forth the reasonable

15

expectations and obligations of both the defendant and the State in sufficient detail so that those expectations and agreed-upon responsibilities are clearly understood." Brimage Guidelines at 103.

Notably, the Brimage Guidelines allow for downward departures from authorized plea offer agreements in exchange for a defendant's cooperation with law enforcement in the "identification, investigation, apprehension, or prosecution" of individuals involved in a drug-trafficking scheme or other criminal activity. Id. at 101. When determining the appropriate sentence reduction, the prosecutors may consider, among other things, the following:

> 1. The prosecutor's evaluation of the nature, extent, significance, value, and usefulness of the defendant's assistance;
>
> 2. The truthfulness, completeness, and reliability of any information or testimony provided by the defendant;
>
> 3. The extent to which the defendant's assistance concerns the criminal activity of other person(s) who are more culpable than the defendant;
>
> 4. Any injuries suffered, or any danger or risk of injury to the defendant or his or her family resulting from the assistance; and,
>
> 5. The timeliness of the defendant's assistance.
>
> [Id. at 102.]

However, under the Brimage Guidelines, "a defendant's cooperation agreement can be satisfied only if his or her efforts are of substantial value to the State." Gerns, 145 N.J. at 217-18. Good faith efforts alone are insufficient. Id. at 229. Indeed, "even partial performance must provide some tangible benefit to the prosecutor." Id. at 227. Reducing a sentence based on "defendant's efforts in the absence of valuable cooperation fails to achieve any legislative purpose." Id. at 228-29.

While the Brimage Guidelines "vest the prosecutor with the authority to decide whether a defendant has provided cooperation that has substantial value to the State, a prosecutor may not be arbitrary or capricious in that determination." Id. at 228. "Although the [Gerns] hearing must be 'deliberate, not perfunctory,' ordinarily the prosecutor's decision will be dispositive." Ibid. (quoting State v. Shaw, 131 N.J. 1, 17 (1993)).

"The standard of judicial review of a prosecutor's decision requires a defendant to show by clear and convincing evidence that the prosecutor's decision was arbitrary or capricious." Id. at 222 (citing Vasquez, 129 N.J. at 196). Here, defendant failed to satisfy this burden. Under the terms of the Cooperation Agreement, defendant did not qualify for a downward departure because his cooperation did not result in the prosecution of Person 1 for first- or second-degree distribution or possession with intent to distribute CDS. Thus, defendant did not satisfy the clear and unambiguous terms of the

Cooperation Agreement. While defendant's cooperation with law enforcement as to Persons 2 through 6 may have been somewhat helpful, those efforts did not fall under the Cooperation Agreement.

The record fully supports the trial court's determination that defendant did not show by clear and convincing evidence that the prosecutor's decision was arbitrary or capricious. Because defendant's cooperation as to Person 1 was not of substantial value, it did not entitle him to a downward departure from the plea agreement's recommended sentence. We discern no abuse of discretion by the prosecutor or the trial court.

Defendant further argues that imposing the recommended sentence was a clear error of judgment that shocks the judicial conscience. We disagree.

"Appellate courts review sentencing determinations in accordance with a deferential standard." State v. Fuentes, 217 N.J. 57, 70 (2014) (citing State v. O'Donnell, 117 N.J. 210, 215 (1989)). We determine "whether there is a 'clear showing of abuse of discretion.'" State v. Bolvito, 217 N.J. 221, 228 (2014) (quoting State v. Whitaker, 79 N.J. 503, 512 (1979)). The sentence imposed by a trial court must be affirmed "unless: (1) the sentencing guidelines were violated; (2) the findings of aggravating and mitigating factors were not 'based upon competent credible evidence in the record'; or (3) 'the application of the guidelines to the facts' of the case 'shock[s] the judicial conscience.'" Ibid. (alteration in original) (quoting State v. Roth, 95 N.J. 334, 364-65 (1984)). "A

A-0175-19

sentence imposed pursuant to a plea agreement is presumed to be reasonable. . . ." Fuentes, 217 N.J. at 70.

Defendant pled guilty to first-degree distribution of CDS in exchange for a recommended minimum mandatory sentence under N.J.S.A. 2C:35-5(b)(1) and N.J.S.A. 2C:43-6(a)(1), and dismissal of the remaining counts. He was sentenced in accordance with the plea agreement because he did not satisfy the Cooperation Agreement. N.J.S.A. 2C:35-12 "prohibit[ed] the court from imposing a lesser term of imprisonment." Courtney, 243 N.J. at 80 (quoting Brimage, 153 N.J. at 9).

Moreover, the sentencing guidelines were not violated. The aggravating and mitigating factors applied by the court were supported by competent credible evidence in the record. The sentence does not shock our conscience. We discern no abuse of discretion.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION