618 A.2d 294

STATE OF NEW JERSEY, PLAINTIFF–APPELLANT,
v. FRANK SHAW, DEFENDANT–RESPONDENT.

STATE OF NEW JERSEY, PLAINTIFF–APPELLANT,
v. FRANCISCO SANTIAGO, DEFENDANT–
RESPONDENT.

Argued October 27, 1992—Decided January 12, 1993.

1

*Robin A. Hamett,* Assistant Prosecutor, argued the cause for appellants (*Edward F. Borden, Jr.,* Camden County Prosecutor, attorney).

*J. Michael Blake*, Assistant Deputy Public Defender, argued the cause for respondents (*Zulima V. Farber*, Public Defender, attorney).

The opinion of the Court was delivered by

O'HERN, J.

Our new Code of Criminal Justice " 'reflects a delicate balance between discretion and fixed sentencing. An independent judiciary is its fulcrum.' " *State v. Lagares*, 127 *N.J.* 20, 30, 601 *A.*2d 698 (1992) (quoting *State v. Warren*, 115 *N.J.* 433, 449, 558 *A.*2d 1312 (1989) (citations omitted)). In this case, we must locate the proper balance point between discretionary and fixed sentencing under the hybrid scheme for drug offenses that vests sentencing authority in both courts and prosecutors. The specific issue concerns the validity of a provision in a drug-offense plea agreement that would hold a defendant responsible to appear voluntarily for sentencing as a condition to the prosecutor's waiver of an otherwise mandatory minimum term of imprisonment. We hold that when integrated under the *State v. Vasquez*, 129 *N.J.* 189, 609 *A.*2d 29 (1992), guidelines [1] for valid law-enforcement purposes, a no-appearance/no-waiver provision is valid and enforceable.

I

Both defendants, Shaw and Santiago, pled guilty to school-zone violations of *N.J.S.A.* 2C:35-7. Because of the drugs involved, each was subject to a mandatory minimum term of not less than one-third of the base term to be imposed for the third-degree offenses involved or three years, whichever is greater. Because the dates are relevant to an understanding of

---

[1] A prosecutor's statutory authority to grant or refuse waiver of mandatory term is constitutional if the prosecutor states, in accordance with adopted guidelines, the reasons for the decision to waive or the refusal to waive the parole disqualifier. *Vasquez, supra,* 129 *N.J.* 189, 609 *A.*2d 29.

the need for swift and certain punishment in drug cases, we recite the background to each case.

## A.

Shaw sold cocaine to an undercover narcotics officer on May 9, 1989. He allegedly employed a juvenile to complete the drug deal. He was arrested on May 9, 1989. A grand jury indicted him on August 25, 1989, charging him with three counts of violation of *N.J.S.A.* 2C:35: a section 5 illegal distribution of drugs, a section 7 illegal distribution of drugs within a thousand feet of a school zone, and a section 6 employment of a juvenile in the sale.[2] Both of the section 7 and 6 offenses carry mandatory terms. Shaw worked out a negotiated plea with the prosecutor whereby he, Shaw, would plead guilty to the second count of the indictment, distribution within one thousand feet of a school zone. In exchange, the State agreed to drop the first and third counts of the indictment and recommend a five-year sentence with a one-year period of parole ineligibility. However, if defendant failed to appear at sentencing or subsequently was arrested, the prosecutor would refuse to waive the mandatory sentence by making no recommendation concerning sentencing. That clause is known as a no-show recommendation or no-appearance provision. Under the terms of the plea, defendant was admitted to bail on his own recognizance. Defendant appeared in the Law Division on October 10, 1989, and entered a plea of guilty to count two in accordance with the above terms. The court accepted the plea and scheduled the sentencing for November 9th.

Shaw failed to appear on November 9th. He turned himself in on January 2, 1990. He said that he had wished to spend the holidays with his family. At sentencing, on January 8, 1990,

---

[2] For convenience, we abbreviate the references that are set forth in *N.J.S.A.* 2C:35–5 (manufacturing, distributing, or dispensing), *N.J.S.A.* 2C:35–6 (employing a juvenile in a drug-distribution scheme), and *N.J.S.A.* 2C:35–7 (criminalizing the distribution of drugs within one thousand feet of school property).

the prosecutor withdrew his waiver of the mandatory sentence by making no recommendation on sentencing. The trial court found no aggravating or mitigating factors and sentenced defendant to the presumptive term for the third-degree offense charged, four years in State Prison, including a three-year period of parole ineligibility. The court imposed other penalties required for drug offenses.

The Appellate Division reversed. *State v. Shaw*, 253 *N.J.Super.* 187, 601 *A.*2d 709 (1991). That court ruled that the no-appearance provision placed an additional limitation on the judiciary's already severely-circumscribed authority under *N.J.S.A.* 2C:35–12 and "unduly interferes with the residuum of judicial sentencing discretion." *Id.* at 194, 601 *A.*2d 709. It ruled that the sentencing court could consider a defendant's non-appearance in deciding on the day of sentencing whether "to accept or reject the [plea] agreement." *Id.* at 195, 601 *A.*2d 709. It ruled that the trial court had erred in automatically applying the no-appearance provision. *Ibid.* It thus invoked its own jurisdiction under *Rule* 2:10–3 and imposed the one-year period of parole ineligibility required under the negotiated plea. *Ibid.* One member of the Appellate Division panel concurred in the result. He believed that the section 7 waiver provision was unconstitutional. *Id.* at 196, 601 *A.*2d 709 (Shebell, J.A.D., concurring). However, he reasoned that if constitutional, "the sentencing judge is free to impose a sentence more lenient than the plea bargain approved by the State, except here the sentence must comply with the legislatively imposed mandatory sentencing provisions of *N.J.S.A.* 2C:35–7." *Ibid.* We granted the State's petition for certification, 130 *N.J.* 7, 611 *A.*2d 647 (1992), and denied defendant's cross-petition. 130 *N.J.* 396, 614 *A.*2d 618 (1992). On April 8, 1992, Shaw was released due to the expiration of his maximum sentence.

## B.

Santiago was accused on July 5, 1990, of possession of cocaine with intent to distribute within one thousand feet of a

school zone. He pled guilty to the charge pursuant to a negotiated plea agreement under which the prosecutor agreed to recommend a sentence of 364 days in the county jail as a condition of three years probation. The agreement also provided that defendant be released on his own recognizance, that he report to the bail unit on a weekly basis, and that he appear for sentencing. If he failed to appear, the guilty plea would stand but the prosecutor would withdraw his waiver and make no recommendation on sentencing. The trial court accepted the plea and scheduled sentencing for August 3rd.

Santiago failed to appear on August 3, 1990. He was arrested as a fugitive in September and brought before the court for sentencing on October 19, 1990. Defendant asserted that his home had "burned to the ground" and that he had been required to move to the Bronx and was unable to return to New Jersey on the sentencing date. The court found that explanation unacceptable. Finding two aggravating factors and one mitigating factor, the court sentenced defendant to four years, to be served in State Prison, with a three-year period of parole ineligibility. The court also imposed other penalties required for drug offenses.

The Appellate Division reversed. *State v. Santiago*, 253 *N.J.Super.* 197, 601 *A.*2d 714 (1991). The court agreed with the *Shaw* court that the no-appearance/no-waiver agreement posed an undue burden on judicial sentencing authority. However, the court reasoned that the sentence contemplated by the negotiated plea would be imposed only on "the prosecutor's recommendation, and [the prosecutor's] recommendation did not survive the non-appearance." *Id.* at 203, 601 *A.*2d 714. Thus the court remanded, reasoning "that the proper remedy is to permit the parties to renegotiate the plea agreement or for the defendant to withdraw the plea which should not have been initially accepted." *Ibid.* Defendant has not been resentenced. We granted the State's petition for certification, 130 *N.J.* 7, 611 *A.*2d 647 (1992), and denied defendant's cross-petition, 130 *N.J.* 396, 614 *A.*2d 618 (1992).

## II

We have but recently reviewed the background issues with respect to mandatory minimum sentencing for drug offenses under the Comprehensive Drug Reform Act of 1986, *N.J.S.A.* 2C:35–1 to –23 (the Act). See *State v. Peters*, 129 *N.J.* 210, 609 *A.*2d 40 (1992); *Vasquez, supra,* 129 *N.J.* 189, 609 *A.*2d 29; *State v. Dillihay,* 127 *N.J.* 42, 601 *A.*2d 1149 (1992); *Lagares, supra,* 127 *N.J.* 20, 601 *A.*2d 698. We need but restate the general background.

The declaration of policy and legislative findings that accompanied the enactment of *N.J.S.A.* 2C:35–1.1 announced that "[d]espite the impressive efforts and gains of our law enforcement agencies, the unlawful use, manufacture and distribution of controlled dangerous substances continues to pose a serious and pervasive threat to the health, safety and welfare of the citizens," *N.J.S.A.* 2C:35–1.1b, and that "New Jersey continues to experience an unacceptably high rate of drug-related crime, and continues to serve as a conduit for the illegal trafficking of drugs to and from other [states]," *ibid.,* subjecting our citizens to "other violent and non-violent crimes, including murder, assault, robbery, theft, burglary and organized criminal activities." *Ibid.* The Legislature sought

to provide for the strict punishment, deterrence and incapacitation of the most culpable and dangerous drug offenders, and to facilitate where feasible the rehabilitation of drug dependent persons so as ultimately to reduce the demand for illegal controlled dangerous substances and the incidence of drug-related crime.

[*N.J.S.A.* 2C:35–1.1c.]

The Legislature found that

[i]n order to be effective, the battle against drug abuse and drug-related crime must be waged aggressively at every level along the drug distribution chain, but in particular, our criminal laws must target for expedited prosecution and enhanced punishment those repeat drug offenders and upper echelon members of organized narcotics trafficking networks who pose the greatest danger to society.

[*Ibid.*]

In addition, the Legislature also sought

> to afford special protection to children from the perils of drug trafficking, to ensure that all schools and areas adjacent to schools are kept free from drug distribution activities, and to provide especially stern punishment for those drug offenders who operate on or near schools and school buses, who distribute to juveniles, or who employ juveniles in a drug distribution scheme. * * * *[O]ur criminal laws and sentencing practices must be reexamined and amended so as to minimize pretrial delay, thereby to ensure the prompt disposition of all drug-related charges and the prompt imposition of fair and certain punishment.*

[*Ibid.* (emphasis added).]

Reflecting the Legislature's intent to combat drug use and distribution and to keep school zones drug free, the Act imposes strict penalties, including a mandatory minimum sentence for drug offenses occurring in a school zone. *N.J.S.A.* 2C:35–7 (legislating that except in cases involving less than one ounce of marijuana, the court shall impose a minimum term of at least one-third of the base sentence for third-degree offenses or three years, whichever is greater).

In *Vasquez,* we noted that "[s]ection 7's [ (school zone) ] parole disqualifier is *not* absolute—it can be waived at the discretion of the prosecutor." 129 *N.J.* at 199, 609 *A.*2d 29. Section 12 contains the following waiver provision:

> Whenever an offense defined in this chapter specifies a mandatory sentence of imprisonment which includes a minimum term during which the defendant shall be ineligible for parole, or a mandatory extended term which includes a period of parole ineligibility, the court upon conviction shall impose the mandatory sentence unless the defendant has pleaded guilty pursuant to a negotiated agreement or, in cases resulting in trial, the defendant and the prosecution have entered into a post-conviction agreement, which provides for a lesser sentence or period of parole ineligibility. The negotiated plea or post-conviction agreement may provide for a specified term of imprisonment within the range of ordinary or extended sentences authorized by law, a specified period of parole ineligibility, a specified fine, or other disposition. In that event, the court at sentencing shall not impose a lesser term of imprisonment, period of parole ineligibility or fine than that expressly provided for under the terms of the plea or post-conviction agreement.

[*N.J.S.A.* 2C:35–12.]

Because the prosecutor can thus waive the parole disqualifier, section 7's sentencing is not mandatory "at least in the typical or conventional use of mandatory sentencing." *Vasquez, supra,* 129 *N.J.* at 199, 609 *A.*2d 29. "Therefore, the section 7 sentencing scheme is a hybrid, combining mandatory and discretionary features and delegating sentencing authority to both the courts and the prosecutors." *Ibid.*

The issue posed in *Vasquez* was "whether the sentencing court [was] compelled by the standards controlling the sentencing scheme of sections 7 and 12 to impose a period of parole ineligibility when resentencing a defendant following a violation of probation," *id.* at 199–200, 609 *A.*2d 29,—specifically, "whether the courts *must* impose the parole disqualifier of section 7 if the prosecutor refuse[d] at resentencing to waive the parole disqualifier under section 12." *Id.* at 200, 609 *A.*2d 29 (emphasis added). We ruled that "[o]nce the parole disqualifier prescribed under section 7 is waived, it is no longer 'mandatory' for purposes of resentencing for a violation of probation," *ibid.,* and that, further, "the prosecutor retains no sentencing authority on resentencing with respect to the imposition of a parole disqualifier." *Ibid.* The Court expressly noted that "section 12, which authorizes the waiver of the mandatory term, does so only in the context of the original sentencing," *id.* at 201, 609 *A.*2d 29, and "[t]hat waiver may occur as part of a plea agreement or a post-conviction sentencing agreement." *Ibid.*

The Court reasoned to that result by analysis of earlier decisions in *State v. Baylass,* 114 *N.J.* 169, 553 *A.*2d 326 (1989), and *State v. Molina,* 114 *N.J.* 181, 553 *A.*2d 332 (1989), setting forth the standards governing resentencing following a violation of probation. The legislative context for such resentencing forecloses a redetermination of the aggravating factors or gravity of the offenses that existed at the time of the original offense. Because probation was the punishment fitting the

crime at original sentencing, to impose a custodial term at resentencing in excess of the presumptive term would be most unusual. *Vasquez, supra,* 129 *N.J.* at 206, 609 *A.*2d 29.

Hence, in the absence of express authority, we were unable to infer that the Legislature had intended to impose an absolute mandatory parole disqualifier on resentencing for a violation of probation based on a school zone drug conviction. *Id.* at 201, 609 *A.*2d 29. The statute did not authorize prosecutors to exercise sentencing authority on resentencing, nor did it authorize prosecutors, through either waiver or the making of a request, to demand that a period of parole disqualification be affixed to the sentencing. A defendant could not agree to divest a court of its sentencing authority or responsibility no matter how clear the agreement. *See State v. Warren,* 115 *N.J.* 433, 446, 558 *A.*2d 1312 (1989) (concluding "that the negotiated-sentence practice constitutes an impermissible constraint on the sentencing discretion of trial courts as currently governed and structured by the Code of Criminal Justice and Court Rules"). The prosecutor did not have the power during the original negotiations to bargain with parole ineligibility after violation of probation, and defendant's acceptance of such a term would not transfer such a power to the prosecutor.

### III

In this case, we review not an attempt to transfer the judicial power by agreement, as with resentencing in *Vasquez,* but rather the initial exercise of the "delegat[ed] sentencing authority," *Vasquez, supra,* 129 *N.J.* at 199, 609 *A.*2d 29, of the prosecutor. We concluded in *Vasquez* that the prosecutor's statutory authority to grant or refuse waiver of a mandatory term as part of a plea agreement does not offend principles of separation of powers when the authority is exercised in accordance with appropriately-adopted standards. *Id.* at 196–97, 609 *A.*2d 29. We must therefore consider in this case whether a defendant's failure to appear at sentencing is an arbitrary and

capricious reason for refusing to exercise prosecutorial discretion if the no-appearance condition is included within appropriately-adopted standards.

The prosecutorial guidelines set forth in the *Report of the Uniform Narcotics Charging and Disposition Working Group, Directive 9.1*, at 18–20 [*Prosecutor's Guidelines*] (prosecutorial guidelines for Section 12 waiver of mandatory minimum and extended terms), recognize that although the predominant purpose of the section 12 waiver was to give " 'strong incentives to cooperate with law enforcement to overcome the perceived and substantial risks associated with turning State's evidence and exposing their superiors, suppliers and affiliates,' " *Vasquez, supra*, 129 *N.J.* at 204, 609 *A.2d* 29 (quoting John M. Cannel, *New Jersey Criminal Code Annotated*, Legislative Comment to *N.J.S.A.* 2C:35–12 (1992)), that is not the only law-enforcement purpose to be served by the section 12 waiver provisions. For example, consideration of "nature and strength of the pending case" reflects a consideration of prosecutorial resources. *Prosecutor's Guidelines, supra*, at 19. Among the paramount policies of *N.J.S.A.* 2C:35–1 is to "ensure the most efficient and effective dedication of limited investigative, prosecutorial, judicial and correctional resources," *N.J.S.A.* 2C:35–1.1c, and "to facilitate where feasible the rehabilitation of drug dependent persons." *Ibid.* Using the waiver power to advance these legislative goals would not be an abuse of power.

Since the advent of the war on drugs in 1987, the tripartite law-enforcement system of prosecution, defense, and judiciary, has faced a sudden and tremendous surge of case filings. Even today, "[t]he whole system [is straining] under mounting backlogs." *Proposed Standards for the Operation of the New Jersey Criminal Division of Superior Court* (Apr. 15, 1992) [*Proposed Standards*], *in Report of the Committee on Post–Indictment Fugitives*, App. III, at i-ii (Oct. 21, 1992) [*Fugitives Report*]. In 1990, 60,000 drug-related cases were added to the criminal dockets. *Supreme Court, State of New Jersey, Re-*

port of *Task Force on Drugs and the Courts,* at 17 (Apr.1991) [*Task Force Report*]. Also in 1990, the Special Committee to Assess Criminal Division Needs called for an increase of seventeen judicial units—judge, prosecutor, defense, and support— for statewide improvement of management techniques. *Proposed Standards, supra,* at ii.

A Statewide Task Force on Drugs in the Courts, chaired by Justice Stewart Pollock, reported to the 1990 Judicial Conference. Reiterating the work of ten years of learning under the speedy-trial program, the report calls for the system to solve problems "through improved cooperation with other components." *Task Force Report, supra,* at 10. Among the standards recommended by the Task Force on Drugs in the Courts were

the greater availability of drug assessments; vigorous prosecutorial screening; case tracking; more resources; individual calendars; future and *meaningful court event preparation;* plea cut-offs; and performance standards.

[*Proposed Standards, supra,* at ii (emphasis added).]

Criminal fugitive cases—cases in which the defendant fails to appear for a court event after indictment and a warrant has issued—are critical to case management. The problem cannot easily be solved by detaining all accused. New Jersey jails and prisons are severely overcrowded. State prisons are currently at 134% of rated capacity. *Fugitives Report, supra,* at 2. Thus, county jails have over 3400 State inmates. County jails were, as of September 29, 1992, at 133% of rated capacity. *Ibid.* Criminal fugitive cases effectively annul worthwhile court event preparation. "The fugitive problem has been exacerbated by increases in the number of cases due to the war on drugs." *Id.* at 1.

The Fugitive Committee found that one of the keys to reducing or eliminating the problem of fugitives is the early disposition of cases. Passaic County's preindictment program enjoys a 90% appearance rate. *Id.* at 11. "Defendants are aware that the best plea opportunities occur at the first appearance." *Ibid.* When combined with an aggressive bail-review policy

that includes such things as restrictions on victim contact and drug testing, early dispositions will hold down the fugitive problem. In the more crowded urban vicinages, such as those in Essex County, swift and certain disposition of cases is critical because federal court orders will release criminal defendants awaiting trial whenever the jail population exceeds a certain figure. *Id.* at 12. In short, the problem of getting defendants into the courtroom is immense. That we cannot over-emphasize "the need to avoid unnecessary court events" is clear. *Proposed Standards, supra,* at v. "In some jurisdictions, the waste of time for attorneys, judges, and others during court events which do not achieve their purpose, often due to the failure to get something done beforehand, is intolerably high." *Ibid.*

Prosecutors may thus reasonably consider early disposition as an important law-enforcement objective, thus harnessing the most efficient use of prosecutor, defense, and judge time. Incorporation of a no-appearance/no-waiver provision tends to further a goal stated in the Legislature's declaration of policy to "minimize pretrial delay, thereby to ensure the prompt disposition of all drug-related criminal charges and the prompt imposition of fair and certain punishment." *N.J.S.A.* 2C:35–1.1c.

> [The system must] proceed on the premise that the war on drugs will not produce an early armistice and that current and future funding is never adequate and these known facts mandate that we discontinue the practice of trying to handle all drug cases, ranging from simple possession to high scale distribution by the same case processing techniques and through limited resources. Cases that result in pleas to non-custodial sentences should not remain in the system a year or more * * *. The plea [should] be accepted within weeks after the complaint is initiated.
>
> [George J. Nicola, J.S.C., Address at Judicial College (Nov.1990).]

Not only does early disposition maximize efficiency, it also furthers a second goal of the Act, rehabilitation. The first step in reform and rehabilitation is the acceptance of personal responsibility by the drug-dependent person. To consider as a condition to that rehabilitative treatment a requirement of cooperation by way of timely appearance for sentencing hardly

seems arbitrary or capricious. The concept seems in principle similar to the terms of supervisory treatment required for admission of a defendant to pretrial intervention (PTI). *See generally N.J.S.A.* 2C:43–12 (discussing the PTI program). On violation of PTI conditions, the court will determine whether the violation warrants that the charges against the participant be reactivated and the prosecutor may proceed as though no supervisory treatment had been commenced. *N.J.S.A.* 2C:43–13.

Defendants argue that requiring a defendant's appearance for sentencing is nothing more than a substitute for a bail requirement. We disagree. Rather, it is a manifestation of the defendant's willingness to participate in a rehabilitative program that in turn will contribute to assuring that the most efficient and effective dedication of the State's resources is achieved. Society can little afford the limited expenditures involved in tracking down and summoning to court an unresponsive drug defendant. A general rule of construction of the Code holds that when a Code provision is susceptible of differing constructions, "it shall be interpreted to further the general purposes [of the Code] and the special purposes of the particular provision involved." *N.J.S.A.* 2C:1–2c. The section 12 waiver provisions should be interpreted to further the general purposes of the Code.

In *Vasquez* we were unable to infer that the Legislature had intended to confer sentencing authority on prosecutors after the stage of initial sentence; in these cases we are clearly able to infer that the Legislature would intend that prosecutors have discretion to include a no-appearance term in a plea agreement to effectuate the purposes of the Act. We note that in Shaw's case, one of the conditions for the grant of lenity was that defendant not be re-arrested before sentence. The Legislature would surely not intend to tie the hands of prosecutors to a grant of lenity when a defendant renews criminal activities between plea and sentence. We can also infer that the Legislature would not intend to tie the hands of prosecutors to a grant

of lenity when the defendant makes no effort at rehabilitation between plea and sentence as evidenced by an inexcusable failure to appear.

We do not expect that a requirement that a defendant show up for sentencing be routinely stated as a basis for granting waiver of the otherwise-mandatory minimum sentences. In *Lagares, supra,* 127 *N.J.* at 32, 601 *A.*2d 698, we explained that the prosecutorial "guidelines should reflect the legislative intent to make. extended sentencing of repeat drug offenders the norm rather than the exception." In these section 7 cases, too, we would expect that application of the guidelines will reflect the legislative intent to provide "especially stern punishment for those drug offenders who operate on or near schools and school buses." *N.J.S.A.* 2C:35-1.1c. At the same time, "prosecutors should remember that the Legislature did not mandate extended sentences, recognizing that in certain circumstances enhanced punishment may be unwarranted." *Lagares, supra,* 127 *N.J.* at 32, 601 *A.*2d 698. Failing to show up for sentencing is obviously not an initial factor that would suggest that enhanced punishment may be warranted. At the same time, it is also a clear signal that the legislative policy to facilitate, where feasible, the rehabilitation of drug-dependent persons may be unachievable in the defendant's case.

Because the no-waiver provision fosters the several law-enforcement purposes set forth in the Act, including facilitation, where feasible, of the rehabilitation of drug-dependent persons, minimization of pretrial delay, prompt disposition of drug-related criminal charges, and swift imposition of fair and certain punishment, we hold that inclusion of such provision in a plea agreement does not constitute an arbitrary or abusive exercise of the prosecutor's discretionary power. In the analogous context of discretionary sentencing, *State v. Subin,* 222 *N.J.Super.* 227, 238–39, 536 *A.*2d 758 (App.Div.), *certif. denied,* 111 *N.J.* 580, 546 *A.*2d 506 (1988), held that "a component of a plea agreement that provides for an increased sentence when a defendant fails to appear that is voluntarily and knowingly

entered into between a defendant and the State does not offend public policy." Of course in *Subin* the court was not automatically obliged to impose the enhanced sentence by virtue of the defendant's non-appearance in court. But at the same time the *Subin* court ruled that the trial court "must always sentence in accordance with the applicable sentencing provisions of the Code." *Id.* at 239, 536 *A.*2d 758. The applicable sentencing provisions of the Code for this class of drug cases confer on the court the discretion to sentence at various ranges but require the imposition of a period of parole ineligibility when the prosecutorial waiver is denied or withdrawn.

Complicating the sentencing issue here is that unlike the situation in *Vasquez,* we do not have a clear demarcation between prosecutorial and judicial function, but rather have a *shared* exercise of sentencing power. That hybrid exercise involves two steps, plea and sentencing. Courts must play an active role in accepting or rejecting a plea bargain. The only reasonable way to impart definitiveness to the process is for the courts to review, at the time of initial plea, the prosecutor's exercise of discretion under the *Lagares/Vasquez* guidelines.

■ Not every violation of the waiver conditions by an accused defendant will result in automatic imposition of a mandatory sentence. The automatic imposition of enhanced punishment for a non-appearance without holding a hearing or considering an explanation would be unwarranted. *See State v. Wilson,* 206 *N.J.Super.* 182, 502 *A.*2d 46 (App.Div.1985) (enhancing a sentence based entirely on non-appearance in court is illegal).[3] The court must provide a fair hearing to determine

---

[3] In *Wilson* the court reflexively imposed an enhanced sentence (from the record it appears to have been an extended sentence) without engaging in the weighing process required by *State v. Dunbar,* 108 *N.J.* 80, 527 *A.*2d 1346 (1987), or even affording the defendant a hearing. The difference between *Wilson* and these cases is that the courts below held hearings and exercised their discretion in setting the base term of the sentence. The Code *requires* the

whether the violation of the terms of the arrangement warrants its revocation. The process is deliberate, not perfunctory. The court will consider the explanation for the non-appearance in the context of all the circumstances, including the law-enforcement reasons initially stated by the prosecutor, and the extent of any partial performance by the defendant either by testifying in other cases or providing information useful to the prosecutor. The court will then determine whether in the circumstances the breach is material to the plea and therefore warrants revocation of the prosecutor's waiver of mandatory sentence. A useful example is the hearing process to test a violation of pretrial-intervention conditions. See *N.J.S.A.* 2C:43–13e. Without an acceptable excuse, the proceedings against the participant may be reactivated and the prosecutor may proceed on the charges as though no agreement had been made. Obviously, judges are not automatons, and if the enforcement of the plea would be fundamentally unfair, courts, as the "fulcrum" of the system, retain the necessary judicial power under *Rule* 3:21–1 to avoid a miscarriage of justice. See *State v. Smullen*, 118 *N.J.* 408, 416–18, 571 *A.*2d 1305 (1990) (allowing court before sentencing to permit defendant to withdraw guilty plea in the interests of fundamental fairness or to avoid miscarriage of justice).

## IV

Applying those principles to these cases, we believe that a remand to require the parties to renegotiate the plea or otherwise to permit the defendant to withdraw from the plea is not the proper solution. We should strive to avoid unnecessary court events. As noted, the proper balance between discretion and fixed sentencing should be determined at the time of the initial plea. If the trial court has any doubt about the fairness

---

enhancement of a parole bar; the Code did not *require* that Wilson be given an extended term.

of the arrangements at the plea, the court's obligation is to refuse to accept the plea. The prosecutor will have stated, in accordance with the guidelines, the reasons for the plea agreement. Once accepted by the court, the plea governs the sentencing. If a defendant's failure to appear at sentencing warrants revocation of the waiver provision in the plea, the trial court will thereafter sentence in accordance with the drug laws when a prosecutor fails to make another sentencing recommendation or waive the mandatory sentence.

In these cases, however, to go back to "square one" is simply not possible. Hence, the sentencing process is missing a link. The trial courts presumably did not engage in the necessary deliberative process that would test the prosecutor's inclusion of the no-appearance/no-waiver provision in the plea agreement against the prosecutor's stated guidelines governing whether to grant or deny lenity in specific cases. We follow the disposition made in *State v. Lagares, supra,* 127 *N.J.* at 33, 601 *A.*2d 698. Having there required as a predicate to the exercise of prosecutorial sentencing authority the adoption of guidelines and the statement on the record of the reasons for seeking the enhanced penalty of an extended term, we remanded the case to the Law Division to consider whether, in the circumstances of the case, the prosecutor had abused his or her discretion in the sentencing decision. The decision in *State v. Gonzalez,* 254 *N.J.Super.* 300, 310, 603 *A.*2d 516 (App.Div.1992), did the same in a school-zone case, remanding the case to allow the defendant "to convince the judge that the prosecutor's exercise of discretion [to deny leniency] was arbitrary and capricious." The cases of *Shaw* and *Santiago* both preceded *Lagares* and the adoption of the prosecutorial guidelines. They should be remanded to the Law Division, as were *Lagares* and *Gonzalez,* to consider the statement on the record by the prosecutor of the reasons for the prosecutorial decision and the relationship of those reasons to the prosecutorial guidelines. We note that the guidelines do not now incorporate the no-appearance factor in the weighing process. If prosecutors intend to employ the

factor in the decision-making process, the factor will have to be incorporated in the guidelines.

The judgment of the Appellate Division in *Shaw* is reversed and the matter is remanded to the Law Division for further proceedings in accordance with this opinion.

The judgment of the Appellate Division in *Santiago* is affirmed insofar as it remands the cause to the Law Division; the judgment is reversed insofar as it would require the parties to renegotiate the plea or to permit the defendant to withdraw. What remains to be considered is whether the reasons stated by the prosecutor are consistent with the guidelines and the decision to deny leniency does not constitute an abuse of discretion.

In both cases the Law Division sentences will be reinstated absent a finding that the prosecutor has acted arbitrarily (*i.e.*, without reason related to the prosecutorial waiver guidelines), or that because of the circumstances, enforcement of the plea would be fundamentally unfair or a miscarriage of justice. In the interests of judicial economy and simple justice, if the Law Division finds in either of these cases that the prosecutor has acted arbitrarily or that manifest injustice would result, the court will sentence as if the waiver had been granted in that case. In future cases, courts will assess at the initial plea the reasonableness of including the no-appearance condition in the plea bargain.

*For reversal and remandment in Shaw and for affirmance in part; reversal in part in Santiago*—Chief Justice WILENTZ and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—7.

*Opposed*—None.