**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2406-16T3

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

KEITH M. TURNER, JR., a/k/a KEITH
M. TURNER and MICHAEL TURNER,

    Defendant-Appellant.

_____

Submitted February 27, 2018 – Decided September 27, 2018

Before Judges Yannotti and DeAlmeida.

On appeal from Superior Court of New Jersey, Law Division, Salem County, Indictment Nos. 14-07-0430 and 15-08-0399.

Joseph E. Krakora, Public Defender, attorney for appellant (Rochelle Watson, Assistant Deputy Public Defender, of counsel and on the brief).

John T. Lenahan, Salem County Prosecutor, attorney for respondent (David M. Galemba, Assistant Prosecutor, of counsel and on the brief).

The opinion of the court was delivered by

DeAlmeida, J.A.D.

Defendant Keith M. Turner, Jr. challenges a Law Division order denying his motion to suppress evidence obtained during his arrest, as well as the sentence imposed for three drug-related charges to which he subsequently pled guilty. We affirm.

## I.

The following facts are derived from the record. On March 6, 2015, Salem City Police Officer Sean Simpkins received information from an anonymous source that defendant had an active arrest warrant and was residing at XXX Thompson Street. Simpkins confirmed the existence of the warrant, which did not list XXX Thompson Street as defendant's address, and decided to observe the residence to determine if defendant was living there. Simpkins saw defendant's mother and sister leaving the home.

On March 7, 2015, Simpkins returned to the residence, along with two officers to look for defendant. After Simpkins knocked on the front door, someone inside said "come in." Simpkins, while in full uniform, stepped inside, identified himself, and asked for defendant. In response, the person who

answered the knock said something to the effect of, "'[d]o what you gotta do,' '[u]pstairs,' or '[w]hatever.'"

The officers went further into the home. On the first floor they encountered defendant's paramour. Simpkins testified that upon seeing the officers, the paramour yelled up the stairs "something like, 'Baby, they're coming,' or 'Baby, I'm coming.'" Simpkins heard several male voices talking upstairs and began to walk upstairs. While Simpkins was on the stairs, defendant's paramour unsuccessfully tried to stop his progress by swiping at his feet. When Simpkins reached the top of the stairs, he saw co-defendant Sean Williams run across the hallway and enter a bedroom to the left. Upon seeing Williams reach underneath a mattress, Simpkins drew his weapon and ordered him to show his hands. Simpkins then saw defendant and his adult son in the room to the right and ordered them to get on the ground. Simpkins told defendant he had a warrant for his arrest and put him in handcuffs. In the room, Simpkins smelled marijuana, and saw marijuana, and a clear plastic bag containing a white rock-like substance in plain sight.

K.S.[1] then exited from a back room and asked what was happening. Simpkins informed her that he was there to arrest defendant. K.S. told Simpkins

---

[1] We refer to K.S. by her initials to preserve her privacy.

A-2406-16T3

she was the lessee of the residence.  He advised her that he could not ignore the narcotics in plain view and asked defendant and K.S. for permission to conduct a search.

Simpkins read both a Permission to Search form and Miranda warning card to defendant, who signed both.  K.S. also signed the Permission to Search form.  That form stated that the signatory "authorize[s the] officers to remove any documents or property which [the officers] consider pertinent to their investigation, knowing that the same can be used as evidence against" the signatory.

After being advised of his Miranda rights, and before a search began, defendant admitted that everything in the bedroom where he was arrested was his property.  A search revealed suspected heroin, drug paraphernalia, United States currency, and a box of vials.  In the bedroom where Williams was located officers found three vials of suspected marijuana, as well as a backpack containing a pistol.

Salem County Indictment No. 15-08-0399 relates to the evidence found during defendant's arrest.  The Indictment charged defendant with two counts of third-degree possession of a controlled dangerous substance (CDS) (heroin and cocaine) with intent to distribute, N.J.S.A. 2C:35-5(a)(1) and N.J.S.A. 2C:35-

5(b)(3); one count of fourth-degree possession of CDS (marijuana) with intent to distribute, N.J.S.A. 2C:35-5(a)(1) and N.J.S.A. 2C:35-5(b)(12); two counts of third-degree possession of CDS (heroin and cocaine), N.J.S.A. 2C:35-10(a)(1); one count second-degree of unlawful possession of a weapon, N.J.S.A. 2C:39-5(b); and one count of second-degree possession of a weapon by certain persons, N.J.S.A. 2C:39-7(b).

At the time of his arrest, defendant had been charged under Salem County Indictment No. 14-07-0430 with third-degree possession of CDS (heroin), N.J.S.A. 2C:35-10(a)(1); and third-degree possession of CDS (heroin) with intent to distribute, N.J.S.A. 2C:35-5(a)(1) and N.J.S.A. 2C:35-5(b)(3).

On November 20, 2015, defendant appeared before the trial court on a motion to suppress the evidence found during his arrest, arguing that Simpkins did not have valid consent from K.S. or defendant to search defendant's bedroom.[2]

The trial court denied defendant's suppression motion. In addition to addressing the argument raised by defendant, the court also found that Simpkins had an objectively reasonable belief that defendant was residing at the home and

---

[2] Defendant also moved to suppress his statement to the arresting officer, and to sever his trial from that of his codefendant. Defendant did not preserve the right to appeal the trial court's resolution of those aspects of his motion.

was present at the time of the arrest. The court also found that the officers were invited into the residence by the person who answered the door, and that when defendant's paramour called upstairs to defendant, exigent circumstances permitted the officers to go upstairs to prevent defendant's escape and the destruction of evidence.

On February 3, 2016, defendant entered a guilty plea to one count of third-degree possession of CDS under Indictment 14-07-0430, and two counts of third-degree possession of CDS under 15-08-0399. In exchange for the plea, the State agreed to recommend a sentence of three years of incarceration with an eighteen-month period of parole ineligibility on all three counts to run concurrently. The agreement provided that if defendant failed to appear for his sentencing he would be exposed to any ordinary terms that could be imposed on the three counts and the State could move for an extended term.

On June 3, 2016, defendant failed to appear for sentencing. As a result, a bench warrant was issued for his arrest. The warrant was executed on August 22, 2016.

On November 1, 2016, the trial court held a sentencing hearing. Defendant argued that he did not attend the June 3, 2016 hearing because he was hospitalized. He did not turn himself in when he was released from the hospital

because he thought he would receive notice from the court of a new sentencing date. Although finding that the documentary evidence defendant submitted to establish his hospitalization was illegible, the trial court gave him the benefit of the doubt and assumed he was hospitalized on the original sentencing date. However, the trial court found that defendant did not come to court after the emergent situation ended, despite being aware from prior experience that a bench warrant would be issued for him. The court considered the matter an open plea.

The State elected not to seek an extended term and recommended defendant receive on each conviction a five-year term of imprisonment, subject to an eighteen-month period of parole ineligibility, with all sentences to be served concurrently. After finding and weighing the aggravating and mitigating factors, the court sentenced defendant as recommended by the State, imposed fines and penalties, and ordered forfeiture of all seized property. This appeal followed.

Defendant raises the following arguments for our consideration:

A-2406-16T3

POINT I

THE SEARCH OF THE THIRD PARTY'S HOME TO EXECUTE THE ARREST WARRANT AGAINST DEFENDANT WAS UNLAWFUL.

  i. THE POLICE LACKED AN OBJECTIVELY REASONABLE BASIS TO BELIEVE THAT DEFENDANT RESIDED AT [XXX] THOMPSON STREET.

  ii. THE UNIDENTIFIED PERSON'S OFFHAND REMARK THAT DEFENDANT WAS "UPSTAIRS" AND THAT THE POLICE COULD "DO WHAT YOU GOTTA DO" DOES NOT CONSTITUTE VALID CONSENT TO SEARCH THE HOME.

POINT II

THE SENTENCE IMPOSED IS MANIFESTLY EXCESSIVE.

In his reply brief, defendant raised an additional argument:

POINT I

BECAUSE THE TRIAL COURT MADE A FACTUAL FINDING THAT THE POLICE HAD A VALID BASIS TO SUSPECT THAT DEFENDANT LIVED AT THE RESIDENCE, AND BECAUSE THE RECORD IS ADEQUATELY DEVELOPED ON THIS ISSUE, DEFENDANT'S CHALLENGE TO THE ENTRY INTO THE THIRD-PARTY'S HOME TO EXECUTE THE ARREST WARRANT IS PROPERLY BEFORE THE APPELLATE COURT.

II.

The arguments set forth in defendant's merits brief were not raised in the trial court. "It is a well-settled principle that our appellate courts will decline to consider questions or issues not properly presented to the trial court when an opportunity for such a presentation is available unless the questions so raised on appeal go to the jurisdiction of the trial court or concern matters of great public interest." Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973) (quotations omitted). Neither exception applies here. We could, therefore, decline to review defendant's arguments.

However, despite the narrow argument raised by defendant in support of his suppression motion, the trial court carefully examined every aspect of defendant's arrest and the search of XXX Thompson Street. The trial court made findings of fact and conclusions of law with respect to whether the officers had an objectively reasonable basis to believe defendant resided at the home and would be present, as well as whether the officers validly entered the second floor of the home. In light of the record developed in the trial court, we will address defendant's belatedly raised arguments.

"[A]n appellate court reviewing a motion to suppress must uphold the factual findings underlying the trial court's decision so long as those findings

are supported by sufficient credible evidence in the record."  State v. Elders, 192 N.J. 224, 243 (2007) (quotations omitted).  The "findings of the trial judge . . . are substantially influenced by his [or her] opportunity to hear and see the witnesses and to have the 'feel' of the case, which a reviewing court cannot enjoy."  State v. Locurto, 157 N.J. 463, 471 (1999) (citation omitted).  "An appellate court should disregard those findings only when a trial court's findings of fact are clearly mistaken."  State v. Hubbard, 222 N.J. 249, 262 (2015).

The Fourth Amendment, and Article I, Paragraph 7 of the New Jersey Constitution, protect "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ."  U.S. Const. amend. IV; N.J. Const. art. I, ¶ 7.  "'[P]hysical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed.'"  Payton v. New York, 445 U.S. 573, 585 (1980) (quoting United States v. United States Dist. Court, 407 U.S. 297, 313 (1972)).  "Under our constitutional jurisprudence, when it is practicable to do so, the police are generally required to secure a warrant before conducting a search of certain places."  State v. Hathaway, 222 N.J. 453, 468 (2015).  "[I]n the absence of consent or exigency, an arrest warrant is not lawfully executed in a dwelling unless the officers executing the warrant have objectively reasonable bases for believing that the

A-2406-16T3

person named in the warrant both resides in the dwelling and is within the dwelling at the time." State v. Cleveland, 371 N.J. Super. 286, 299 (App. Div. 2004) (quotations omitted).

After observing Simpkins during the suppression hearing, the trial court found the officer to be credible, an evaluation we have no reason to reject. The court concluded that the officer had an objectively reasonable basis to believe defendant was residing and present at the residence based on the anonymous tip, his observation of defendant's mother and sister at the residence the day before, and the statement of the person who answered the door that defendant was upstairs. The record amply supports these findings.

We are not persuaded by defendant's argument that our holding in State v. Miller, 342 N.J. Super. 474, 479 (App. Div. 2000), requires reversal of the trial court's decision. In that case, a warrant had been issued for Miller's arrest. The address listed on the warrant proved not to be his home. Officers, suspecting that Miller could be found at what they believed was his paramour's home, went to that address to look for him. Id. at 481. The mother of Miller's paramour was there and told officers that her daughter and Miller lived at another address and were there at that time. Ibid. The officers proceeded immediately to that address. The paramour answered the door and stated that Miller was not in the

home.  The trial court found that the officers entered the residence despite not having obtained consent to do so.  Ibid.  The officers discovered Miller in the home and found incriminating evidence while effectuating his arrest.  The trial court suppressed the evidence, finding that the residence at which Miller was arrested was not his home, and that the officers' warrantless entry into the home was not lawful.  Ibid.

On appeal, we affirmed the trial court's decision.  We held that a statement that a subject of a warrant resides at a particular residence "unsupported by observation, investigation or other inquiry" is, standing alone, insufficient to support an objectively reasonable belief to enter that residence to effectuate an arrest on the warrant.  Id. at 497.  As we explained, "[t]he officers in this matter did nothing to confirm independently the snippet of opinion they had received from [the paramour's]  mother," did not suggest that they anticipated Miller's departure from the premises, and offered no basis to believe he was present in the home at the time of entry.  Id. at 500.

Here, Simpkins, after receiving a tip from an anonymous source, observed two members of defendant's family leaving the residence in question.  The following day, the person who answered the door told the officer that defendant was on the second floor, strengthening the officer's belief that defendant resided

A-2406-16T3

in the home and was present.  These facts form an objectively reasonable basis to believe that defendant resided at the home and was present at the time that the officer was there.[3]

In addition, there is sufficient support in the record for the trial court's conclusion that the officers obtained consent to enter the premises from the person who answered the front door.  "A search conducted without a warrant is presumptively invalid, and the burden falls on the State to demonstrate that the search is justified by one of the 'few specifically established and well-delineated exceptions' to the warrant requirement."  State v. Frankel, 179 N.J. 586, 598 (2004) (quoting Mincey v. Arizona, 437 U.S. 385, 390 (1978)).  "[O]ur case law permits a warrantless search when incident to a lawful arrest [or] when consent is given . . . ."  State v. Johnson, 193 N.J. 528, 552 (2008) (citing State v. Moore, 181 N.J. 40, 45 (2004)).

When Simpkins knocked on the door someone inside invited him to "come in."  Once inside, the officer identified himself and explained he was looking for defendant.  The person responded "[d]o what you gotta do," "[u]pstairs," or

_____

[3] We acknowledge the State's argument that at the suppression hearing it was deprived of the opportunity to introduce evidence with respect to the reliability of the anonymous source because defendant did not argue that Simpkins lacked an objectively reasonable basis to believe that defendant resided at the home in question.

"[w]hatever." By identifying defendant's location in the home and indicating that the officer could fulfill his stated purpose, the person consented to the officer's entry into the residence.

Moreover, the trial court found that exigent circumstances were present shortly after the officers entered the home. Exigent circumstances compelling action are an exception to the warrant requirement. Moore, 181 N.J. at 45.

> Although "exigent circumstances" cannot be precisely defined or reduced to a neat formula, . . . some factors to be considered in determining whether law enforcement officials faced such circumstances are the urgency of the situation, the time it will take to secure a warrant, the seriousness of the crime under investigation, and the threat that evidence will be destroyed or lost or that the physical well-being of people will be endangered unless immediate action is taken . . . .
>
> [Johnson, 193 N.J. at 552-53 (citations omitted).]

Here, after Simpkins was informed that defendant was upstairs, the officer encountered defendant's paramour, who yelled up the stairs "something like, 'Baby, they're coming.'" Simpkins then heard male voices upstairs and proceeded upstairs. Defendant's paramour attempted to stop him by swiping at his feet. The trial court found that the occurrence of this series of events "raise[d] great concern that . . . if there is any evidence, that it could be

14

destroyed. That, at minimum, the defendant may be seeking to run." We find sufficient credible evidence in the record supporting these conclusions.

Moreover, we note that once the officers were lawfully in the home they had a legitimate interest "in taking steps to assure themselves that the house in which a suspect is being . . . arrested is not harboring other persons who are dangerous and who could unexpectedly launch an attack." Maryland v. Buie, 494 U.S. 325, 333 (1990). Simpkins observed or heard multiple people in the residence, observed one person yell a warning to someone upstairs, and encountered an attempt to physically impede his progress toward the location where he was previously told he would find defendant.

## III.

We review a sentence for abuse of discretion. See State v. Robinson, 217 N.J. 594, 603 (2014) (citing State v. Roth, 95 N.J. 334, 364-65 (1984)). "A defendant who pleads guilty in reliance on a promise or agreement of the State has the right to expect that the bargain will be fulfilled." State v. Subin, 222 N.J. Super. 227, 238 (App. Div. 1988) (citing Santobello v. New York, 404 U.S. 257, 262 (1971)). A "component of a plea agreement that provides for an increased sentence when a defendant fails to appear that is voluntarily and knowingly entered into between a defendant and the State does not offend public

15

policy." Subin, 222 N.J. Super. at 238-39. The sentencing court, however, cannot impose a sentence only based on the defendant's non-appearance. Ibid. "The automatic imposition of enhanced punishment for a non-appearance without holding a hearing or considering an explanation would be unwarranted." State v. Shaw, 131 N.J. 1, 16 (1993). "The court must provide a fair hearing to determine whether the violation of the terms of the arrangement warrants its revocation." Id. at 16-17.

The trial court held a hearing to determine whether defendant's failure to appear warranted revocation of the plea agreement. The court accepted as true defendant's claim to have been hospitalized on the original sentencing date. However, the court found that defendant's failure to turn himself in upon release from the hospital was not justified. We see no basis to disturb the trial court's findings.

Finally, our review of the sentencing record reveals that the trial court appropriately weighed the aggravating factors, N.J.S.A. 2C:44-1(a) (3), (6), and (9), and a lack of mitigating factors, and imposed a reasonable sentence that in no way "shocks the judicial conscience." State v. Roth, 95 N.J. 334, 364 (1984).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

16

A-2406-16T3