**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5134-17T1

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

DWIGHT J. BARNES, a/k/a
DWIGHT TYLKA,

     Defendant-Appellant.

_____

Submitted April 28, 2020 – Decided June 19, 2020

Before Judges Gilson and Rose.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Indictment Nos. 16-04-0594, 16-04-0608, 16-06-1074, 16-10-1559, and Accusation No. 17-08-0731.

Joseph E. Krakora, Public Defender, attorney for appellant (Margaret Ruth McLane, Assistant Deputy Public Defender, of counsel and on the briefs).

Christopher L.C. Kuberiet, Acting Middlesex County Prosecutor, attorney for respondent (David Michael Liston, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Following the denial of a motion to suppress the seizure of a handgun, defendant Dwight J. Barnes pled guilty to two charges related to the gun: second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b); and second-degree certain persons not to have weapons, N.J.S.A. 2C:39-7(b)(1). Defendant also pled guilty to three drug-related crimes: two counts of third-degree possession of heroin, N.J.S.A. 2C:35-10(a)(1); and third-degree possession of heroin with the intent to distribute, N.J.S.A. 2C:35-5(a)(1) and (b)(3). He was sentenced to an aggregate prison term of twelve years, with seven years of parole ineligibility.

Defendant appeals, contending that his motion to suppress the gun should have been granted. We disagree and affirm his convictions. Defendant also challenges his sentence because he was given a longer prison term than the recommendations in his plea agreements. The sentencing court did not follow the recommendations because defendant did not appear on the date he was originally scheduled to be sentenced. We reject defendant's argument because when he pled guilty he was informed by the court that if he failed to appear for sentencing he might lose the benefit of the State's plea recommendations and at the sentencing, when he was told he would not get the benefit of the

A-5134-17T1

recommendations, he did not ask to withdraw his guilty pleas. Accordingly, we also affirm his sentence.

## I.

The facts concerning the motion to suppress were developed at a hearing where three law enforcement officers testified. Their testimony established that in April 2015, the police were involved in a narcotics investigation. As part of that investigation, the police obtained a warrant to search a residence located in Perth Amboy.

On the evening of April 8, 2015, approximately ten police officers executed the search warrant at a residence where Ruby Toomer, Bruce Toomer Jr., and Shlanda Toomer lived. Bruce Toomer had previously been identified as an individual involved in a controlled drug buy. When the police arrived at the home, Ruby Toomer, who is the mother of Bruce and Shlanda, answered the door and shortly thereafter began to complain of chest pains. Accordingly, the police called an ambulance, which responded to the house. While the house was being searched, Detective Brian Jaremczak walked onto the front porch of the home. As he was standing there, he noted a red Chevrolet parked down the street and saw a woman get out of the car and walk towards the house. When

3

the woman saw Jaremczak, she turned around and began walking back to the car.

Jaremczak testified that he recognized the red Chevrolet as a car that had been involved in a prior controlled narcotics purchase conducted by police as part of their investigation. Accordingly, Jaremczak called to the other officers in the house, asking for officers with a car. Jaremczak also testified that he heard someone on the side of the house yell "stop, police," but the woman kept walking. The woman then got into the red Chevrolet and drove away.

Two police officers responded to Jaremczak's call: Detectives Bonilla and Harris. Detective Bonilla testified that he and Harris ran to their unmarked vehicles, activated the cars' lights and sirens, and began to follow the red Chevrolet. Bonilla also testified that as he was running to his car, he heard someone yell "stop, police." According to Bonilla, when his car was approximately one car-length behind the red Chevrolet, he saw a dark object thrown out of the passenger side window of the vehicle.

Bonilla contacted Sergeant Carmelo Jimenez and reported what he had seen concerning the object. Jimenez, who also testified at the hearing, explained

4

that he went to the location to investigate.[1]  At the location, Jimenez found a handgun with scuff marks, a partially-loaded magazine, and several loose handgun rounds.

Meanwhile, Bonilla and Harris continued to follow the red Chevrolet. After the Chevrolet travelled several more blocks, it pulled over and stopped. When the officers approached the car, they found a woman in the driver's seat, who was later identified as Shlanda Toomer.  They also found a man in the passenger seat, later identified as defendant.  The police then seized a pair of brass knuckles, arrested defendant and Toomer, and impounded the car.

After hearing their testimony, the trial court found the officers to be credible.  The court then found that the police had reasonable and articulable suspicion to believe that Toomer was engaged in criminal activity when she walked away and drove off in the red Chevrolet.  Accordingly, the court found that the police had a lawful basis to follow and conduct an investigative stop of the red Chevrolet.  The court also found that the handgun had been abandoned when it was thrown out of the window during the pursuit.  Consequently, the court ruled that the handgun had been lawfully seized and denied the motion to

---

[1]  At the time of the incident, Jimenez was a sergeant.  When he testified at the hearing, he had been promoted to lieutenant.

suppress the gun. The court did grant the motion to suppress the brass knuckles because it found that they were not in plain view and were therefore seized without a warrant and with no applicable exception to the warrant requirement.

Following the denial of his motion to suppress the gun, defendant pled guilty to the five crimes. Defendant had been charged with multiple crimes in five separate indictments and an accusation. As noted earlier, two of the crimes related to the gun and the other three crimes were related to drug charges.

On May 17, 2017, defendant pled guilty to four crimes under four separate indictments: (1) second-degree unlawful possession of a weapon (count seven of Indictment 16-04-594-I); (2) second-degree certain persons not to have weapons (count one of Indictment 16-04-608-I); (3) third-degree possession of heroin (count one of Indictment 16-04-1559-I); and (4) third-degree possession of heroin with the intent to distribute (count three of Indictment 16-06-1074-I). On August 10, 2017, defendant pled guilty to third-degree possession of heroin under Accusation number 17-08-731-A.

In making his guilty pleas, defendant testified that on April 8, 2015, he was exercising control over a gun while in a car in Perth Amboy. He also acknowledged that at the time he had a prior domestic violence conviction. Defendant went on to testify that on three separate dates – July 20, 2016, March

6

1, 2016, and June 23, 2017 – he possessed heroin.  He also testified that on March 1, 2016, when he possessed the heroin, he intended to share or distribute the heroin.

All the pleas were entered as part of two negotiated plea agreements.  In the May 2017 plea agreement, the State agreed to recommend that defendant be sentenced as follows:  five years in prison with three-and-a-half years of parole ineligibility on the conviction for second-degree unlawful possession of a weapon; five years in prison with five years of parole ineligibility on the conviction for certain persons not to have weapons; five years in prison for possession of heroin; and five years in prison for the conviction of possession of heroin with the intent to distribute.  The State also agreed to recommend that all those sentences be run concurrently.

In the August 2017 plea agreement, the State agreed to recommend that defendant be sentenced to three years in prison with nine months of parole ineligibility under the Accusation where he admitted to possessing heroin.  The State further agreed that it would recommend that the sentence be run consecutive to defendant's sentences under the Indictments.  Consequently, under the plea agreements the State recommended that defendant be sentenced

to an aggregate prison term of eight years with five years and nine months of parole ineligibility.

When defendant pled guilty in May 2017, the judge informed him that his sentencing date was December 1, 2017. The judge also told defendant that if he failed to appear for sentencing, he could lose the benefit of the plea bargain. Thereafter, defendant failed to appear for his sentencing on December 1, 2017.

He later did appear and was sentenced on April 13, 2018.[2] At the sentencing hearing, defendant directly addressed the sentencing judge and explained that he had failed to appear for the scheduled sentencing date because he had relapsed on drugs and had cut off his monitoring bracelet. His counsel then acknowledged that the court might not be bound by the plea agreements but asked that the sentencing recommendations still be followed. In response, the State contended that the recommendations no longer applied, and the State would be charging defendant with contempt for cutting off the monitoring bracelet while he was on presentencing release. At no point did defendant or his counsel ask to withdraw his guilty pleas.

---

[2] The parties do not explain if defendant was apprehended or if he turned himself in after he failed to appear at the first sentencing hearing.

Ultimately, the sentencing judge imposed longer sentences than recommended in the plea agreements on the two weapon charges and on the drug charge under the Accusation. The judge found aggravating factors three, six, and nine, and no mitigating factors. Thereafter, the sentencing judge sentenced defendant as follows: (1) eight years in prison with three-and-a-half years of parole ineligibility on the conviction for second-degree unlawful possession of a gun; (2) eight years in prison with five years of parole ineligibility on the conviction for second-degree certain persons not to have weapons; (3) five years in prison on the conviction for possession of heroin; (4) five years in prison for the conviction for possession of heroin with intent to distribute; and (5) four years in prison with two years of parole ineligibility on the conviction of possession of heroin under the Accusation. Consequently, defendant's aggregate sentence was twelve years in prison with seven years of parole ineligibility. Consistent with the plea agreements, the court dismissed all remaining charges against defendant, including charges that had been asserted in a fifth indictment under Indictment number 16-10-1551-I.

II.

On appeal, defendant makes two arguments, which he articulates as follows:

I.    POLICE HAD NO REASONABLE SUSPICION
TO CONDUCT AN INVESTIGATORY STOP.  THE
GUN MUST BE SUPPRESSED AS A FRUIT OF THIS
ILLEGAL STOP.

II.    THE COURT ILLEGALLY SENTENCED
DEFENDANT    ABOVE    THE    MAXIMUM
CONTEMPLATED BY THE PLEA AGREEMENT.

We are not persuaded by these arguments and we address them in turn.

A.    The Motion to Suppress

Appellate review of a denial of a motion to suppress physical evidence following an evidentiary hearing is limited.  Factual findings made by the trial court will be disturbed only when they are not supported by sufficient credible evidence in the record.  State v. Hagans, 233 N.J. 30, 37 (2018) (quoting State v. Gamble, 218 N.J. 412, 424 (2014)).  This deference is required "because those findings 'are substantially influenced by [an] opportunity to hear and see the witnesses and to have the "feel" of the case, which a reviewing court cannot enjoy.'"  Gamble, 218 N.J. at 424-25 (alteration in original) (quoting State v. Johnson, 42 N.J. 146, 161 (1964)).  Accordingly, we reverse "only when the trial court's determination is 'so clearly mistaken that the interests of justice demand intervention and correction.'"  Hagans, 233 N.J. at 37-38 (quoting Gamble, 218 N.J. at 425).  We review the trial court's legal determinations de novo.  Id. at 38 (citing Gamble, 218 N.J. at 425).

The United States Constitution and the New Jersey Constitution protect individuals from "'unreasonable searches and seizures' by government officials." Ibid. (quoting State v. Watts, 223 N.J. 503, 513 (2015)). A warrantless search is presumptively unreasonable. Ibid. To overcome this presumption, the State must prove by a preponderance of the evidence that the search was based on probable cause and "f[ell] within one of the few well-delineated exceptions to the warrant requirement." Id. at 38-39 (alteration in original) (quoting State v. Bryant, 227 N.J. 60, 69-70 (2016)). One such exception is an investigatory stop. State v. Alessi, 240 N.J. 501, 517-18 (2020).

To lawfully stop a motor vehicle, a police officer must have a "reasonable and articulable suspicion that the driver of a vehicle, or its occupants, is committing a motor-vehicle violation or a criminal or disorderly persons offense." State v. Scriven, 226 N.J. 20, 33-34 (2016) (citing State v. Locurto, 157 N.J. 463, 470 (1999)). Accordingly, an investigatory stop is permissible "if it is based on specific and articulable facts which, taken together with rational inferences from those facts, give rise to a reasonable suspicion of criminal activity." State v. Chisum, 236 N.J. 530, 545-46 (2019) (quoting State v. Pineiro, 181 N.J. 13, 20 (2004)).

A-5134-17T1

"[I]n determining the lawfulness of an investigatory stop, a reviewing court must evaluate the totality of circumstances surrounding the police-citizen encounter, balancing the State's interest in effective law enforcement against the individual's right to be protected from unwarranted and/or overbearing police intrusions." Id. at 546 (internal citations omitted) (quoting State v. Privott, 203 N.J. 16, 25-26 (2010)). "An investigative detention that is premised on less than reasonable and articulable suspicion is an 'unlawful seizure,' and evidence discovered during the course of an unconstitutional detention is subject to the exclusionary rule." Ibid. (quoting State v. Elders, 192 N.J. 224, 247 (2007)).

Applying these principles, the police had grounds to conduct an investigative stop. Detective Jaremczak credibly testified that he recognized the red Chevrolet as a car that had previously been involved in a controlled drug buy. Accordingly, when a woman got out of that car, saw the detective, turned around, and walked back to the car, there was a reasonable and articulable suspicion that the woman or others in the car were involved in illegal narcotics activities. That reasonable suspicion was heightened when an officer yelled "stop, police" but the woman ignored the command and then drove away. In that regard, both Detectives Jaremczak and Bonilla testified that they heard such a command.

12

Accordingly, the police were lawfully following the red Chevrolet when the handgun was thrown out of the car. At that point, defendant abandoned the handgun and the police had the right to seize it. See State v. Dunbar, 434 N.J. Super. 522, 528 (App. Div. 2014) (holding that a gun discarded by a fleeing suspect who disregarded a lawful police directive to stop was abandoned); State v. Farinch, 179 N.J. Super. 1, 5 (App. Div. 1981).

B.    The Sentence

Defendant argues that we should remand with instructions that he be sentenced in accordance with his plea agreements. He contends that the sentencing judge erred by imposing a higher sentence because he failed to appear for his scheduled sentencing date. We disagree.

In general, plea agreements are to be treated like contracts between the prosecutor and defendant. See State v. Means, 191 N.J. 610, 622 (2007); State v. Conway, 416 N.J. Super. 406, 410-12 (App. Div. 2010). The court, however, is not bound by the plea agreement. State v. Bieniek, 200 N.J. 601, 607 (2010). Nevertheless, if a judge is going to impose a different sentence than the one recommended in the plea agreement, the defendant should usually be given an opportunity to withdraw his guilty plea. State v. McNeal, 237 N.J. 494, 499 (2019).

It is acceptable to have a provision in a plea agreement allowing a judge to impose a longer sentence if the defendant fails to appear for sentencing. State v. Subin, 222 N.J. Super. 227, 238-39 (App. Div. 1988). A judge, however, cannot impose a longer sentence merely because the defendant failed to appear. State v. Wilson, 206 N.J. Super. 182, 184 (App. Div. 1985). Instead, the judge must hold a hearing, consider defendant's reason for not appearing, and determine whether under the totality of the circumstances an enhanced sentence is justified. State v. Shaw, 131 N.J. 1, 16-17 (1993).

The issue here is whether the sentencing judge violated the plea agreements by imposing a longer sentence even though the plea agreements did not contain a no-appearance provision. Under all the circumstances of this case, we do not discern that the enhanced sentence was improperly imposed. When defendant pled guilty in May 2017, he was told by the judge taking the plea that if he failed to appear on his scheduled sentencing date, he could lose the benefit of the plea bargain. Defendant was then released and one of the conditions of his release was that he wear a monitoring bracelet. Defendant violated that condition by forcibly removing the bracelet. Thereafter, he relapsed into the use of drugs and did not appear on the scheduled sentencing date.

14

When defendant finally did appear for sentencing, the court conducted a hearing and heard from defense counsel and defendant. Significantly, defendant never asked to withdraw his guilty plea although his counsel acknowledged that the court might impose a longer sentence than in the plea agreements. Indeed, the prosecutor argued that the court was not bound by the plea agreements and should impose a longer sentence. In that regard, the prosecutor asked for a sentence of ten years with five years of parole ineligibility on the conviction for certain persons not to have weapons. After hearing that argument, defendant again did not ask to withdraw his guilty pleas.

The judge then sentenced defendant and departed from the recommended sentence on the weapons offense. Instead of sentencing defendant to five years in prison with three-and-a-half and five years of parole ineligibility, the judge imposed sentences of eight years with three-and-a-half and five years of parole ineligibility. The court also departed from the plea agreement regarding the Accusation; instead of sentencing defendant to three years in prison with nine months of parole ineligibility, the judge sentenced defendant to four years in person with two years of parole ineligibility.

In imposing that sentence, the judge found aggravating factors three, six, and nine. In considering those aggravating factors, the court considered

A-5134-17T1

defendant's arguments as to why he did not appear for the original sentencing date but found them unpersuasive.

Accordingly, the sentencing judge did not simply impose a longer sentence because defendant did not appear. Instead, the judge found that defendant's failure to appear allowed him to impose the sentence he believed was appropriate after evaluating all of the relevant factors, including aggravating and mitigating factors. Consequently, this sentence was not illegal. See Shaw, 131 N.J. at 16-17; Wilson, 206 N.J. Super. at 184.

In addition, defendant is not asking to withdraw his guilty pleas. Instead, he seeks a remand for the imposition of the sentences as originally recommended in the plea agreements. To accept defendant's argument would require us to ignore his violation of a directive from the court to appear and his destruction of a monitoring bracelet. In other words, defendant is asking that there be no consequences visited on him for his own willful actions. We reject that position.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5134-17T1